909 So.2d 874 (2004)
Oriel TANANTA, et al., Appellants/Appellees,
v.
CRUISE SHIPS CATERING AND SERVICES INT'L., N.V., et al., Appellees/Appellants.
Rene E. Chamo, Appellant/Petitioner,
v.
Costa Crociere, S.p.A., etc., et al., Appellees/Respondents.
Fernando Simpson, Appellant/Petitioner,
v.
Costa Crociere, S.p.A., etc., et al., Appellees/Respondents.
Nos. 3D03-1799, 3D02-2788, 3D03-563, 3D03-1719, 3D03-2034, 3D03-2249, 3D03-2075, 3D02-2633, 3D03-700.
District Court of Appeal of Florida, Third District.
December 22, 2004.
Rehearing Denied April 1, 2005.
*877 The Watford Law Firm and Rebecca B. Watford, Miami; J.M. Perez, Jr.; David H. Pollack; Lipcon, Margulies & Alsina, P.A., Miami; and J.H. Zidell, for appellants/appellees, Tananta.
McAlpin & Brais, P.A., Miami, and Richard J. McAlpin; Robert S. Glazier, James J. Feeney; Russell M. Pfeifer, Miami, for appellee/appellants, Cruise Ships Catering and Services.
McCormick & Koretzky, Miami; Philip D. Parrish, Miami, for appellant, Chamo.
McAlpin & Brais, P.A., and Richard J. McAlpin; Russell Pfiefer, for appellee, Costa Crociere.
Elizabeth K. Russo, Miami; Rivkind, Pedraza & Margulies, Miami for appellant, Simpson.
McAlpin & Brais, P.A., and Richard J. McAlpin; Robert S. Glazier, for appellees, Costa Crociere.
Before SCHWARTZ, C.J., and COPE, LEVY, GERSTEN, GODERICH, GREEN, FLETCHER, RAMIREZ, WELLS and SHEPHERD, JJ.
EN BANC
SHEPHERD, J.
This consolidated appeal involves the fate of five foreign seamen wishing to litigate their personal injury claims in Miami-Dade *878 County. We are confronted with a recurring question: whether Florida taxpayers via our state court system are required to provide a forum for the resolution of a personal injury claim by a foreign seaman who has had but a fleeting contact here and who is injured on a vessel far from our shores. We believe this question has been answered by the Florida Supreme Court in Kinney System, Inc. v. Continental Ins. Co., 674 So.2d 86 (Fla. 1996). We find that the seamen's individual litigation must be housed elsewhere, and direct them to seek relief in their own country, Italy or the Netherlands Antilles.

I. The Plaintiffs and their ties to South Florida
Every seaman represented in this consolidated appeal is a foreign seaman injured on a foreign ship while in foreign or international waters.
Oriel Tananta is a citizen and resident of Peru, who worked on the ship Costa Marina. He was an assistant waiter who injured himself in February 2000 while the ship was off the coast of Argentina. He received medical treatment in Argentina, and then in Peru.
Luis Vega is a citizen and resident of Columbia. He, too, worked on the Costa Marina. He was injured in September 1996 while the ship was off the coast of Italy. He fell off his bunk bed, injuring his shoulder. Vega's roommates who witnessed the fall are of Honduran and Guatemalan descent. He filled out his accident form with the help of a Columbian friend. Vega received medical treatment by the ship's doctor, an Italian national, and additional care in Italy.
Eleuterio Guzman Cruz is a citizen and resident of Honduras. He was a deck utility worker aboard the Costa Marina, who injured his arm pulling up cable lines. At the time of his injury in September 2000, the ship was cruising in international waters. Some of his complaints received attention from the ship's doctors who were Italian and French nationals. He subsequently received medical care for his arm in Estonia, and then returned to Honduras for further treatment.
Fernando Simpson is a citizen and resident of Costa Rica, who worked on the ship Costa Allegra. He was a galley worker who fell while trying to clean a large oven. His only eyewitness was a Honduran shipmate. He was injured in November 1998 while the ship was in transit from the Netherlands to Brazil. Following the accident, he left the ship and received medical treatment in Brazil. He then returned home to Costa Rica for further medical care.
Rene Chamo is a citizen and resident of Guatemala, who worked as a linen valet aboard the ship Costa Classica. He was injured lifting a mattress in September 1996 while the ship was sailing off of the Italian coast. He received care from the ship's doctor, an Italian national, and then at a shore-side facility in Italy. He also returned home to Guatemala to receive further medical attention.
Each of these claimants has few, if any, ties to Florida. It appears that the seamen came through Miami during their pre-employment medical screening, and executed their employment contract here, as opposed to in each of their respective homelands. Additionally, certain claimants received medical care in Miami, but the record suggests this was only in conjunction with or after each had retained or consulted with counsel here.

II. The Defendants and their ties to Florida
While some Costa vessels do on occasion enter the United States, the bulk (85%) of *879 Costa's business comes from overseas. The Costa Classica (on which Chamo was injured) is a Liberian-flagged vessel that does not regularly call on U.S. ports, and at no point during Chamos employment aboard the ship did the vessel call at a U.S. port. Indeed, there is no record evidence that the ship has ever been in a U.S. port. The Costa Marina (on which Tananta, Cruz and Vega were injured) was a Liberian-flagged vessel; it has, however, subsequently been re-flagged under the laws of Italy. It continues to cruise between European ports in the summertime and between South American ports in the wintertime. Similarly, there is no record evidence that either the Costa Marina, or the Costa Allegra (Simpson's assigned ship) called on U.S. ports.
In the same vein, the corporate entities behind these vessels have equally sparse connections to the United States, and especially to Florida. The Costa Marina, Costa Allegra, and Costa Classica are owned by an Italian corporation, Costa Crociere S.p.A., which has no offices or employees in Florida, and conducts its day-to-day business from its 450-employee office in Genoa, Italy.[1] Costa Crociere, S.p.A. markets its Costa cruises in the United States through its North American general sales agent, Costa Cruise Lines, N.V., which is a registered Netherlands Antilles corporation with offices located in Hollywood, Florida. Costa Cruise Lines, N.V. is one of eight marketing companies worldwide, and its territory is not limited to the United States, but also includes Venezuela, Canada, Mexico, Costa Rica, Honduras, Nicaragua, Panama and the Caribbean.
Prestige Cruises N.V. is the bareboat charterer (owner pro hac vice) of these vessels, and has a registered office in Curacao, Netherlands Antilles. It contracts with a subsidiary Prestige Cruise Management S.A.M. to perform the actual shipboard management of the hotel and catering functions. Neither entity has any employees or offices in the United States.
Cruise Ships Catering and Services International N.V. (hereafter "CSCS"), is also a Netherlands Antilles corporation that purports to have its principal place of business in Curacao, Netherlands Antilles. CSCS was responsible for hiring and placing each of the claimants aboard one of the ships. CSCS contracts with various independent contractors in Monaco with regard to the accounting and personnel related aspects of these vessels, and similarly contracts in large part with a Hollywood, Florida company  International Risk Services, Inc. (hereafter "IRSI")  to administer medical benefits and claims for its unlicensed crew member-employees.[2]

*880 III. The Propriety of Applying Doctrine of Forum Non Conveniens and our precedent in Cruise Ships Catering and Services Int'l v. Tananta, 823 So.2d 258 (Fla. 3d DCA 2002).
Despite their tenuous connection to our shores, each of the foreign seamen filed an action in Miami-Dade County seeking damages for Jones Act negligence, unseaworthiness, and maintenance and cure. The first of these cases that percolated to this court on appeal was that of Peruvian Oriel Tananta. See Cruise Ships Catering and Servs. Int'l v. Tananta, 823 So.2d 258 (Fla. 3d DCA 2002). In that case, we applied Kinney to hold that the Peruvian seaman's personal injury case required dismissal under the doctrine of forum non conveniens.
The four other seamen whose cases followed Tananta have suggested that our decision in Tananta was erroneous. They ask that we suspend the natural working of Tananta on the grounds that we were misled about the corporate existence of the defendant CSCS in that litigation.
We have carefully reviewed the allegations of falsity made and the record supporting them, including affidavits,[3] and find that the defendants-appellees (the same ones in Tananta as here) may have been coy about the extent to which CSCS actually does business in the Netherlands Antilles. It also appears that officers of CSCS and officers of IRSI shared some responsibilities, and that CSCS, through IRSI, has some distant connection with Florida. Nevertheless, we believe each of these seamen should have had their individual cases dismissed. Our decision in Tananta rested on the principles set forth in Kinney, and was not bottomed on the less than candid affidavits supplied by CSCS.
It is apparent to us that CSCS is one in a structured maze of foreign corporations through which Costa Crociere does business. Indeed, we are free to order our private world as we see fit.[4] However, *881 CSCS not having a substantive operation in Curacao by no means makes Miami the central hub where these kind of crewmen suits should be tried. Appellants' highlighting of CSCS' apparently greater than thought relationship to this state only inures to make the exercise of jurisdiction more proper than not. Such perorating is pointless, however, when the case is dismissed for practical reasons of inconvenience, which is a very different consideration than a jurisdictional one.
For the purposes of this appeal, even assuming that CSCS' corporate existence is fluid, and granting plaintiffs-appellants' allegation that CSCS has globally outsourced all of its prior responsibilities to the Hollywood based IRSI and the Monaco companies, that still does not upset our reasoning and decision in Tananta. The underlying consideration for these other seamen, as was the case in Tananta, is the doctrine of forum non conveniens, not lack of jurisdiction. As Kinney spells out, "[f]orum non conveniens is a common law doctrine addressing the problem that arises when a local court technically has jurisdiction over a suit but the cause of action may be fairly and more conveniently litigated elsewhere." Kinney, 674 So.2d at 87 (footnote omitted). Thus, all of the extraneous controversy surrounding whether CSCS is a shell corporation in Curacao, or whether CSCS does business in Florida, is subsumed in a forum non conveniens analysis. "[I]t now is immaterial how `corporate residency' is determined, because a corporation's various connections with Florida  if any  will only be factors to be weighed in the balance of conveniences." Id. at 93.

IV. The State of Florida has the right to direct whether to apply its own state law procedures in determining the venue of foreign seaman cases as opposed to federal standards.
In the case sub judice, it has been urged that this court apply the federal common law venue rule in admiralty cases. The body of federal law on venue requires that a court first decide under choice of law principles[5] whether the law of the United States should be applied, and if United States law applies, the case should not be dismissed for forum non conveniens. If the court determines United States law does not apply, then the traditional considerations of forum non conveniens are examined to determine whether the court should exercise its discretion to decline to assert jurisdiction over the case. Szumlicz v. Norwegian Am. Line, Inc., 698 F.2d 1192 (11th Cir.1983). However, the federal choice of law test to determine whether the forum non conveniens doctrine applies is required only of federal district courts. 46 U.S.C.App. § 688(a) ("Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located."). The test does not necessarily apply to state courts. American Dredging Co. v. Miller, 510 U.S. 443, 457, 114 S.Ct. 981, 127 L.Ed.2d 285 (1993).
In American Dredging, the United States Supreme Court explicitly held that "venue under the Jones Act is a matter of *882 judicial housekeeping that has been prescribed only for the federal courts." Id. The Court noted that the use of the word "district" in § 688(a) was strong evidence that Congress intended it to apply only to cases in federal court. Bainbridge v. Merchants & Miners' Transp. Co., 287 U.S. 278, 280, 53 S.Ct. 159, 77 L.Ed. 302 (1932). Therefore, "[j]ust as state courts, in deciding admiralty cases, are not bound by the venue requirements set forth for federal courts in the United States Code, so also they are not bound by the federal common-law venue rule (so to speak) of forum non conveniens." American Dredging, 510 U.S. at 453, 114 S.Ct. 981 (italics omitted). Because both venue and forum non conveniens are procedural issues, rather than substantive, they can be left to the states to govern. Id. at 454 n. 4, 456-57, 114 S.Ct. 981 (harmonization not required because the doctrine of forum non conveniens was not a characteristic feature of admiralty per se).
As such, for our purposes we need only see if the Florida Supreme Court has prescribed a standard different than the federal one, and if so, that is what controls. We believe this question was answered in 1996 when the Florida Supreme Court unleashed Kinney. Prior to Kinney, there may have been a predilection in our decisions to follow the federal standard for venue. See Rojas v. Kloster Cruise, 550 So.2d 59 (Fla. 3d DCA 1989) (applying federal inquiry to question of propriety of exercising jurisdiction on defendants whose ship operated exclusively out of Miami). After 1996, this Court necessarily and naturally gave precedence to Kinney over the previously applied federal standard. Guerra v. Selsdon Mar. Corp., 711 So.2d 1298 (Fla. 3d DCA 1998) (holding the lower court did not abuse its discretion in finding dismissal appropriate under doctrine of forum non conveniens), citing Kinney, 674 So.2d at 86. However, our recent decision in Henry v. Windjammer Barefoot Cruises, 851 So.2d 731 (Fla. 3d DCA 2003) has cast some confusion in the admiralty bar.
In Henry, a panel of this court summarily applied the federal choice of law standard on venue, relying on Fantome, S.A. v. Frederick, 2003 WL 23009844 (11th Cir. Jan.24, 2003). In that case, the panel held that the lower court should not have dismissed the matter, but should have exercised "jurisdiction." Because "jurisdiction" was the only issue raised, the Henry panel concluded that the lower court should have exercised jurisdiction over a cruise ship whose base of operations was Miami Beach. The appellate review in Henry did not concern the doctrine of forum non conveniens, but was centered only on the issue of jurisdiction, which precipitated the headlong dive into an inquiry of the federal jurisdictional standard. In so doing, we believe that the panel too readily took refuge in the Eleventh Circuit Court of Appeal's reasoning and analysis in Fantome, and did not sufficiently appreciate its forum constricted applicability. By this opinion, we now recede from Henry and clarify that it is Kinney and the standards articulated by the highest state court in Florida that control this type of foreign seamen's suits brought up on forum non conveniens grounds. "What [has been] prescribed for the federal courts with regard to forum non conveniens is not applicable to the States." American Dredging, 510 U.S. at 457, 114 S.Ct. 981. Though Fantome is well reasoned, it is applicable to seamen's suits brought in federal court. The Florida Supreme Court has articulated a different standard by which we are to weigh foreign seamen suits lodged in our state courts, especially where the issue raised for dismissal is the doctrine of forum non conveniens as opposed to lack of jurisdiction. Kinney, 674 *883 So.2d at 88 ("if Florida applies a less vigorous doctrine of forum non conveniens, the state actually is disadvantaging some of its own residentsa result clearly not intended").[6]
In Kinney, the Florida Supreme Court adopted the federal doctrine of forum non conveniens as outlined in Pain v. United Tech. Corp., 637 F.2d 775 (D.C.Cir. 1980), cert. denied, 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981). However, it is also equally clear that because of its heavy reliance on Pain, the Florida Supreme Court declined to adopt the federal choice of law venue analysis that precedes and predetermines whether to apply the federal forum non conveniens considerations. Pain involved a question of the acceptance of jurisdiction of the federal Death on the High Seas Act. Id. at 781 ("we reject appellants' assertion regarding mandatory jurisdiction"). The seamen's cases here involve the assertion of jurisdiction under the federal Jones Act. The Pain court "assume[d that] the district court had proper jurisdiction over" the consolidated case, leaving "only [the question of] whether the lower court properly renounced that jurisdiction by invoking the doctrine of forum non conveniens." Id. Accordingly, it follows that the Florida Supreme Court in adopting Pain does not require lower courts to engage in a threshold choice of law inquiry, but allows them to proceed directly to the traditional considerations of forum non conveniens, assuming that jurisdiction was proper.[7]
This conclusion is easily gleaned because the very first sentence of Kinney frames the issue as
[whether] a trial court [is] precluded from dismissing an action on the basis of forum non conveniens where one of the parties is a foreign corporation that
(a) is doing business in Florida?
(b) is registered to do business in Florida?
(c) has its principal place of business in Florida?
Kinney, 674 So.2d at 87. Thus, Kinney, like Pain, assumes jurisdiction to be proper *884 and asks courts to view the application of forum non conveniens as "a common law doctrine addressing the problem that arises when a local court technically has jurisdiction over a suit but the cause of action may be fairly and more conveniently litigated elsewhere." Id.
The reasoning and ultimate holding of Kinney obviates all of the cries of foul play here. Even if CSCS were doing business in Florida, which has not been proven here,[8] this would not be controlling or dispositive since it would only weigh in favor of exercising jurisdiction, and would be but one factor to consider in whether the case may be fairly and more conveniently litigated elsewhere so that the ends of justice are better served.

V. The standards adopted by the Florida Supreme Court in Kinney System, Inc. v. Continental Ins. Co., 674 So.2d 86 (Fla.1996) govern.
In Kinney, the Florida Supreme Court held that a trial court presented with a motion to dismiss on the basis of forum non conveniens can go directly (meaning, without engaging in any federal venue-choice of law qualifying test), to a four-step analysis:
[1] As a prerequisite, the court must establish whether an adequate alternative forum exists which possesses jurisdiction over the whole case.
[2] Next, the trial judge must consider all relevant factors of private interest, weighing in the balance a strong presumption against disturbing plaintiffs initial forum choice.
[3] If the trial judge finds this balance of private interests is at or near equipoise, he must then determine whether or not factors of public interest tip the balance in favor of a trial in [another] forum.
[4] If he decides that the balance favors such a forum, the trial judge must finally ensure that plaintiff can reinstate suit in the alternative forum without undue inconvenience or prejudice.
Kinney, 674 So.2d at 90, citing Pain v. United Tech. Corp., 637 F.2d 775 (D.C.Cir. 1980), cert. denied, 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981).

(A). Alternative Adequate Fora
In each of these cases, the respective homeland of the foreign seaman is an adequate alternate forum. Guatemala, Peru, Colombia, Costa Rica, and Honduras have each been found to be a satisfactory venue for personal injury causes of action. Delgado v. Shell Oil Co., 890 F.Supp. 1324 (S.D.Tex.1995) (products liability plaintiffs had adequate remedy in Guatemala, Costa Rica and Honduras); Flores v. Southern Peru Copper Corp., 343 F.3d 140 (2d Cir. 2003) (Peru adequate forum); Iragorri v. Int'l. Elevator, Inc., 203 F.3d 8 (1st Cir. 2000) (Colombia adequate alternative forum). Additionally, as a safeguard, the seamen's cases were dismissed on a conditional basis to assure that the alternate *885 forum indeed did accept jurisdiction over the whole case.
More importantly, defendant-appellees through affidavit[9] have waived time limitation and jurisdictional defenses to the claimant's re-filing in either Guatemala, Peru, Colombia, Costa Rica, Honduras, Italy or Netherlands Antilles. As was the case in Tananta, CSCS here also "affirm[s] that [it is] amenable to process in either jurisdiction." Tananta, 823 So.2d at 259. In Kinney, the Florida Supreme Court opined that the "first step" of determining adequate fora is "satisfied when the defendant is `amenable to process' in the other jurisdiction." Kinney, 674 So.2d at 90; see also Aerolineas Argentinas, S.A. v. Gimenez, 807 So.2d 111, 113 (Fla. 3d DCA 2002). Because the defendants have stipulated to jurisdiction before a tribunal of competent jurisdiction in these other countries or the Netherlands Antilles for resolution of the claim, we find that CSCS has met its burden under the first prong of Kinney.
Additionally, the defendants have also submitted an affidavit of a Dutch lawyer stating that a Netherlands Antilles court will exercise jurisdiction based on its corporate filings there, and that these claimants can find suitable contingency-based legal representation there. Though CSCS' existence in Curacao is gossamer thin,[10] not one of the plaintiffs has disputed why either the Netherlands Antilles or their respective homelands would not entertain their claims, or why they could not pursue remedies there. In fact, considering that every seaman has now returned to reside in his homeland, we imagine that it would be more convenient for each of the injured claimants to fight the matter in his own back yard. Kinney, 674 So.2d at 90 ("There is a local interest in having localized controversies decided at home"). Lastly, since the mothership is in Italy, and defendants-appellees have submitted affidavits that it would consent to litigation there, the plaintiffs-appellants have yet to show why Italy would be unsuitable.
In the underlying consolidated case, as well as in other "forum non" cases where a transfer outside the United States has been requested, we have observed reluctance among lower court judges to release cases to lesser-developed countries. We find that the hesitancy is produced by the perception that our courts dispense justice better. A spirit of American paternalism should not guide whether we find these countries are adequate alternatives. Id. (alternative fora inadequate only when shown that the "remedy available ... clearly amounts to no remedy at all"), citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) (substantive law of alternate forum being less favorable to plaintiff is insufficient to defeat a dismissal based on forum non conveniens). Similarly, we should not retain *886 cases to punish movants for their belief that a foreign jurisdiction may exercise more sobriety and deal more evenhandedly. Kinney, 674 So.2d at 91 ("Of special note, the Pain Court found it irrelevant that the moving party apparently was motivated by a belief that the final award in the alternative forum was likely to be less costly"), citing Pain, 637 F.2d at 794-95.

(B). and (C). Private-Public Interests
Doing the private interest-public interest balancing of Tananta, there is no "private interest" in Miami by the mere allegation that it was the situs of employment contract signing. In a sense, the situs of the signing of a contract is fortuitous, only one factor to be considered, and "is entitled to little weight because a seaman takes his employment, like his fun, where he finds it." Lauritzen v. Larsen, 345 U.S. 571, 588, 73 S.Ct. 921, 97 L.Ed. 1254 (1953).
The seamen also point to Costa's Florida marketing operations as a private interest factor justifying the retention of the matter in South Florida. Generally, "[t]he presence in Florida of corporate subsidiaries whose conduct is unrelated to the claim is [simply] not relevant." Membreno v. Costa Crociere, S.p.A., 347 F.Supp.2d 1289, 1297 (S.D.Fla. 2004), citing Calvo v. Sol Melia, S.A., 761 So.2d 461, 464 (Fla. 3d DCA 2000). For that reason, we find inconsequential the dissent's weight placed on Costa Cruise Lines, N.V.'s Miami office containing 70-100 employees, because a marketing arm for passengers has nothing whatsoever to do with personal injuries suffered by a crewmember. See dissent at 895, fn.18. Moreover, we find that Costa can and indeed should market to any citizens of any country, as well as profit from passengers from any country, without same necessarily being considered a mark of establishment in that country. "The mere fact that a bulk of a company's profits comes from U.S. pockets is insufficient" to be private interest justifying Florida as a forum. Bautista v. CSCS Int'l, N.V., 350 F.Supp.2d 987, 990 (S.D.Fla. 2003) (Order dismissing on forum non conveniens). "In today's climate of worldwide economics and the internet, there are few companies that have no connection with the United States. However, such a connection alone is insufficient to justify the United States' becoming the Court for all tort disputes in the world. [Often,] the [only] connection to the United States is the law practice of Plaintiff's attorneys." Id., at 991.
Lastly, the fact that their medical claims file can be located at IRSI in Hollywood, Florida is similarly insufficient. First, "IRSI ... is merely a consultant company that contracts with Costa to provide claim handling services for Costa's non-European employees.... A copy of a crew member's file is sent to IRSI only if that employee makes a medical claim." Membreno v. Costa Crociere, S.p.A., 347 F.Supp.2d 1289, 1297 (S.D.Fla. 2004). Second, the medical claims file is essentially an administrative document, much like ones kept by a medical insurance company, a secondary, derivative source with only secondary, derivative relevance. The defendants' connections because of IRSI's presence are too "ancillary" to be considered a private interest in favor of Florida. Id.
While the seamen have not pushed this issue as much, the dissent does appear to focus greatly on Carnival's "100% owner[ship] of Costa Crociere." See dissent at 896. We do not find this to be a significant private interest factor in favor of Florida, and tend to agree with the federal court's conclusion in Membreno finding *887 that "[w]hile Carnival certainly has its base of operations in the United States, the evidence presented supports that Carnival does not control Costa's day-to-day operations .... [especially in light of the] maintenance of corporate formalities." Membreno v. Costa Crociere, S.p.A., 347 F.Supp.2d 1289, 1294-95 (S.D.Fla. 2004). Therefore, "Carnival's ownership of Costa's stock does not impact the forum non conveniens analysis." Id.
Other than these few allegations,[11] these seamen have no other connection to Miami. They have not articulated what relevant evidence, if any, could be found here regarding their respective injuries. See La Reunion Francaise v. La Costena, 818 So.2d 657, 660 (Fla. 3d DCA 2002) (dismissed when "[n]o relevant evidence [was] located in Florida [and] plaintiff was unable to list even one Florida witness").[12] Thus, each claimant's initial choice of forum to litigate in Miami has to be called into question, and the "strong presumption favoring the plaintiff's choice of forum" has been toppled. Kinney, 674 So.2d at 91; Piper Aircraft, 454 U.S. at 256, 102 S.Ct. 252 ("plaintiff is unable to offer any specific reasons of convenience supporting his choice").
With regard to the private interest balancing, under Tananta and Kinney, courts are also required to take into account practical concerns, such as adequate access to evidence and relevant sites, adequate access to witnesses, adequate enforcement of judgments, and the practicalities and expenses associated with litigation. Id. In this case, the accident scene was either on the high seas, the Mediterranean, or the Argentinean coastline. These ships do not call on U.S. ports and thus, crew witnesses would all have to be flown in, as well as doctors from Italy, Honduras, Estonia, Costa Rica, Peru, Argentina, Brazil and Guatemala. Each seaman's own family members from each of the five South American countries would likewise have to be flown in to comment on their respective recoveries. The situation with these claimants is wholly different from cases where we have held Miami is an appropriate forum. See Celebrity Cruises, Inc. v. Hitosis, 785 So.2d 521 (Fla. 3d DCA 2000) (allowing Miami-Dade to be the forum because the Defendant companies were actually headquartered in Miami and the injured plaintiff actually received medical treatment in Miami). In sum, the fulcrum on private interests is not in equipoise, but in fact tips the scale in favor of the defendants-appellees to warrant dismissal.
The public interest factors bear on questions of administrative difficulties flowing from court congestion, local interest in deciding localized controversies, the avoidance of unnecessary problems in conflict of laws, and the unfairness of burdening citizens in an unrelated forum with jury duty. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 509, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). These four claimants are like their predecessor Tananta, and we fail to see what interest the State of Florida may *888 have in a Guatemalan national, injured aboard a Liberian-flagged vessel somewhere in the Mediterranean, who was treated by Italian and Guatemalan physicians, or for that matter, what interest we would have in a Columbian, Costa Rican or Honduran national, injured on the high seas aboard non-U.S. vessels, treated by foreign doctors, with only foreign witnesses of their incident to proffer. See Tananta, 823 So.2d at 259 ("Florida has no interest in an accident which occurred on board a ship off the coast of Argentina to a Peruvian citizen while he was working for a foreign corporation on a ship owned and operated by foreign corporations"); see also Pearl Cruises v. Bestor, 678 So.2d 372 (Fla. 3d DCA 1996) (dismissing suit filed in Miami by California citizens who booked through Massachusetts travel agent on an Italian liner for a Western Pacific cruise beginning in Singapore, and sustaining injuries in a traffic accident in Vietnam). The heart of Kinney was to allow the state judiciary in Florida to use the doctrine of forum non conveniens to "serve[ ] as a brake on the tendency of some plaintiffs to shop for the "best" jurisdiction in which to bring a suit  a concern of special importance in the international context [where there is] a growing trend ... to file suit in an American state even for injuries or breaches that occurred on foreign soil." Kinney, 674 So.2d at 87-88. Because the trend to file in Florida had reached "abusive levels," the Florida Supreme Court promulgated Rule 1.061 Forum Non Conveniens. Id. at 94 (See appendix). The lower state courts in Florida should take heed and act in accordance.
The public interests in this case dictate that our taxpayers should not be billed for a case which occurred in foreign waters to a non-U.S. plaintiff working for a foreign cruise ship that merely had a local employee benefits administrator. It is entirely unreasonable to request our courts to commit our judicial resources and time to a case of this type.

(D). No undue inconvenience or prejudice
This last level of analysis ensures that "the remedy potentially available in the alternative forum does not become illusory" because a plaintiff is prejudiced by re-filing. Id. In this case, the defendants-appellees have stipulated that they waive any statute of limitations defenses for the purposes of being sued in Guatemala, Costa Rica, Honduras, Colombia or the Netherlands, and that it will accept service of process. Clearly, there is no inconvenience to Chamo, Vega, Simpson, and Cruz if they each sue on their home turf.

VI. Conclusion
To the extent that these four factors were correctly considered by the trial courts to dismiss each of these cases, we find that their respective decisions were well within the bounds of sound discretion. To the extent that these four factors were considered to retain the seamen's cases, we find that the lower courts abused their discretion. "Nothing in our law establishes a policy that Florida must be a courthouse for the world, nor that the taxpayers of the state must pay to resolve disputes utterly unconnected with this states interest." Id. at 88. While "the Florida Constitution guarantees ... access to our courts for redress of injuries, [citation omitted] that right has never been understood as a limitless warrant to bring the worlds litigation here." Id. at 92. The judiciary of this State cannot serve as a band-aid to the world. These foreign seamen are free to re-file in their native countries or the Netherlands Antilles or even in Italy, but they are not free to misuse or abuse our court system.
*889 Dismissal of each seaman's case is ordered.
LEVY, GERSTEN, GREEN, FLETCHER, and WELLS, JJ., concur.
SCHWARTZ, Chief Judge (specially concurring).
I concur in the result and virtually all of the majority opinion. With respect to part IV, however, I think it sufficient to make it clear that, although Henry v. Windjammer Barefoot Cruises, 851 So.2d 731 (Fla. 3d DCA 2003) formally adopts Fantome, S.A. v. Frederick, 2003 WL 23009844 (11th Cir. January 24, 2003), the reasoning and outcome are also entirely correct under Kinney System, Inc. v. Continental Insurance Co., 674 So.2d 86 (Fla.1996). To my mind, while it is technically more accurate to specify, as in Guerra v. Selsdon Maritime Corp., 711 So.2d 1298 (Fla. 3d DCA 1998), review denied, 728 So.2d 202 (Fla.1998), that Florida rather than federal law applies, it is not necessary to belabor the issue because the applicable standards are indistinguishable. That this is the case is shown on the one hand, by our decision in Henry, which follows Fantome, and, on the other, by the now-numerous federal decisions which reach the same result we do here. See Bautista v. Cruise Ships Catering & Serv. Int'l, N.V., No. 04-10335, 120 F.Appx. 786- (11th Cir. September 16, 2004), aff'g Bautista v. Cruise Ship Catering & Serv. Int'l, N.V., No. 03-6016-CV-WPD (S.D.Fla. November 13, 2003); Estrada v. Cruise Ships Catering & Serv. Int'l, N.V., No. 03-60032 (November 30, 2004); Rey v. Cruise Ships Catering & Servs. Int'l, N.V., No. 03-60157 (November 24, 2004); Membreno v. Costa Crociere S.p.A., 347 F.Supp.2d 1289 (S.D.Fla.2004); Hernandez v. Cruise Ships Catering & Servs. Int'l, No. 03-20302 (S.D.Fla. December 8, 2003); Melbourne v. Auguar Montilla Int'l, Inc., No. 03-6220-CIV (October 5, 2004). But cf. Williams v. Cruise Ships Catering & Serv. Int'l, N.V., 320 F.Supp.2d 1347 (S.D.Fla.2004).
COPE, J. (concurring in part and dissenting in part).
Respectfully, the majority opinion is contrary to the decisions of the Florida Supreme Court in Kinney System, Inc. v. Continental Ins. Co., 674 So.2d 86 (Fla.1996), and the United States Supreme Court in Hellenic Lines, Ltd. v. Rhoditis, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970).

I.
The cruise line (Costa Crociere, S.p.A.) created a subsidiary (CSCS International) which served as the employer of each of the five plaintiffs. At times relevant here, this subsidiary had its land-based business operations in South Florida  in offices no more than a forty-five minute drive from this courthouse. While the appellees (collectively, "the cruise line defendants") claim that CSCS International has moved to Monaco, it is undisputed that CSCS International continues to manage the medical care, and maintenance and cure for these plaintiffs from right here in South Florida.
Second, each plaintiff has brought claims under the Jones Act, 46 U.S.C.App. § 688. This is federal legislation which allows an injured seaman to bring an action for personal injury sustained in the course of his employment. In deciding whether a seaman is entitled to the protection of the Jones Act, the United States Supreme Court decision in Rhoditis directs that we consider the substance of the ship line's contacts with the United States and are not to be distracted by matters of form.
*890 Third, each plaintiff properly filed suit in Miami-Dade County, as the law allows them to do. There is no claim here that there is any absence of jurisdiction or any improper venue as to the cruise line or the other defendants. To read the majority opinion, one would conclude that Costa Crociere is a stranger to Florida but that is not the case. Not only does Costa Crociere have substantial business contacts here, but in 1997 Costa Crociere became 50% owned by Carnival Cruise Line (which is headquartered in Miami) and in 2000, Costa Crociere became 100% owned by Carnival. Suit was properly filed here.
Fourth, the cruise line defendants filed motions to dismiss for forum non conveniens. They argued in each instance that the action should be dismissed with leave for the plaintiff to refile in the Netherlands Antilles (where, it turns out, none of the cruise line defendants has any business operation whatsoever) or in the plaintiff's home country. In plaintiff Chamo's case, they also suggested Italy as an alternative forum. In reality, it is at least as convenient to litigate these cases in Miami as in the plaintiffs' respective home countries or Italy. The public interest factors likewise favor litigation here. These are Jones Act seamen who are entitled to the benefit of the federal statute. Further, Florida law favors providing a fair and effective remedy in the circumstances present here.
In accordance with the Kinney and Rhoditis decisions, there should be no dismissal for forum non conveniens.

II.
Each of the plaintiffs brought his own individual lawsuit against the cruise line defendants alleging a shipboard injury on a Costa Crociere ship. The accidents occurred on various dates between September 1996 and August 2000.[13]
As of 1996, Costa Crociere, S.p.A. was an Italian-owned company with its headquarters in Italy. It owned the three ships on which the plaintiffs were injured.[14]
In 1997, Carnival Corporation  a Miami company  purchased 50% of the stock of Costa Crociere. In 2000 Carnival purchased the remaining shares, so that Costa Crociere is now held as a Carnival subsidiary.
Under the Jones Act, "Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury. . . ." 46 U.S.C.App. § 688(a). The proper defendant in such an action is the seaman's employer. See id. An action under the Jones Act is cognizable in state court. See Garrett v. Moore-McCormack Co., 317 U.S. 239, 243-44, 63 S.Ct. 246, 87 L.Ed. 239 (1942).
Each plaintiff had a written employment agreement with Cruise Ships Catering and Services International N.V. ("CSCS International") *891 as the employer.[15] Each plaintiff sued CSCS International for his Jones Act claim and for maintenance and cure.
Each plaintiff also asserted a claim for unseaworthiness. Such a claim may be made against the owner or bareboat charterer of a vessel. Each plaintiff sued Costa Crociere S.p.A., which was (as already stated) the owner of the three vessels at issue here.
At the time of the plaintiffs' respective accidents, Costa Crociere had chartered the three vessels under bareboat charter agreements to a Costa Crociere subsidiary, Prestige Cruises, N.V. Each plaintiff sued Prestige as the bareboat charterer.
In each case the cruise line defendants moved to dismiss for forum non conveniens. They asserted in substance that CSCS International and Prestige Cruises N.V. had their principal places of business in Curacao, Netherlands Antilles and no business presence in Florida. They argued that the principal place of business for Costa Crociere S.p.A. was Italy. They contended that the relevant evidence and witnesses would be found, for the most part, in foreign countries or in the respective plaintiffs' home countries. The respective plaintiffs opposed the motions.
In Tananta, the trial court denied the motion to dismiss for forum non conveniens and the cruise line defendants appealed. In 2002 a panel of this court reversed. See Cruise Ships Catering and Services International, N.V. v. Tananta, 823 So.2d 258 (Fla. 3d DCA 2002).
On remand, Tananta moved for relief from judgment on the ground that the cruise line defendants had perpetrated a fraud on the court by filing false affidavits in support of the forum non conveniens motion. The trial court conducted a four-day evidentiary hearing in May 2003 and concluded that the motion was well taken. The court found that the cruise line defendants' representatives had submitted affidavits falsely claiming that CSCS International and Prestige Cruises, N.V. had their principal places of business in the Netherlands Antilles when in fact they had no business operations in the Netherlands Antilles whatsoever. Contrary to the cruise line defendants' representations, there are no witnesses or evidence in the Netherlands Antilles relating to these cases.
The court also found that another of Costa Crociere's agents, Guiseppe Campagna,
in the performance of his duties with respect to crew management, disregards corporate formalities by indiscriminately utilizing the letterheads of at least seven different alleged companies within the Costa corporate structure, including Costa, Costa Crociere, CSCS International, N.V., CSCS Carribean, N.V., Zerbone Catering, Costa Cruise Lines, N.V. and Marine & Mercantile Enterprises, Inc.
The Court finds that insufficient formalities are observed with respect to Mr. Campagna's employment among and between, and his work conducted on behalf of, the various Costa-related corporations, and that said employment and work changes indiscriminately.
Order, June 20, 2003, at 13.
The trial court concluded, however, that without leave of this court the trial court was bound by the law of the case to enter *892 a dismissal in accordance with this court's 2002 panel opinion. The court went on to say, in part:
But for the Third District Court of Appeals decision in Tananta, obtained by the fraud of the Defendants but nevertheless currently binding upon this Court, this Court would enter sanctions against the Defendants, [and Defendants' representatives] Mr. Klutz and Mr. Sacconaghi as follows:
A. Strike the affidavits of Klutz and Sacconaghi filed in this case; order that such testimony never be provided or used again; and require Mr. Klutz, Mr. Sacconaghi, and the Defendants to give written notice of the mere paper incorporation of the entities at issue, and absence of employees, offices and operations of said entities, in the Netherlands-Antilles, as well as copies of this Order, to all court clerks, judges and opposing parties in cases past, present or future, involving Costa and any of the entities named in this Order.
B. Award Plaintiff his attorneys fees and costs incurred as a result of or related to defendants' filing of the false affidavits and testimony noted herein, the preparation of plaintiff's motion for consideration of evidence of fraud, the preparation for attendance at the multiple hearings held related to the issue of Defendants' fraud, as well as all appellate proceedings necessitated by the fraud issue, including expense incurred by Defendants' emergency motion to stay this court's hearing on the issue of Defendants' fraud.
C. Order Mr. Klutz and Mr. Sacconaghi to perform community service at a local seafarers' house (or other similar charitable organization serving crew persons) and require the Defendants to make an appropriate monetary donation to said charity.
However, as this Court finds that it is without sufficient power to enforce the foregoing ruling of this Court, this Court abstains from entry of any sanctions against Defendants, Mr. Klutz and Mr. Sacconaghi at this juncture and instead makes its findings available for review and consideration by the Third District Court of Appeal pursuant to Ohio Casualty Group v. Parrish, 350 So.2d 466 (Fla.1977).
Id. at 16-17.
In accordance with this court's mandate, the trial court dismissed the Tananta action and Tananta has appealed. The cruise line defendants have petitioned for a writ of certiorari, challenging the June 20, 2003 order.
In the meantime, in the other pending cases the respective trial judges denied dismissals for forum non conveniens in the Vega and Cruz cases, while granting such motions in the Simpson and Chamo cases.[16] The losing parties in each instance have appealed.
The appeals in Tananta, Vega, and Cruz were consolidated under this court's appeal number 3D03-1799. A panel of the court heard argument in that consolidated appeal, and other panels heard argument in Simpson and Chamo.
This en banc proceeding followed.

III.
As a preliminary matter, I agree with that part of the majority opinion which holds that Kinney System, Inc. v. Continental Ins. Co., 674 So.2d 86 (Fla.1996), is *893 controlling on the issue of forum non conveniens in a maritime case filed in Florida courts. That conclusion is compelled by American Dredging Co. v. Miller, 510 U.S. 443, 114 S.Ct. 981, 127 L.Ed.2d 285 (1993). I concur in receding from Henry v. Windjammer Barefoot Cruises, 851 So.2d 731 (Fla. 3d DCA 2003), to the extent of any inconsistency.[17]

IV.
"Forum non conveniens is a common law doctrine addressing the problem that arises when a local court technically has jurisdiction over a suit but the cause of action may be fairly and more conveniently litigated elsewhere." Kinney System, Inc. v. Continental Ins. Co., 674 So.2d at 87 & n. 1 (Fla.1996). The Kinney decision adopted the federal forum non conveniens doctrine. Id. at 93. The Kinney test for forum non conveniens has been codified in Florida Rule of Civil Procedure 1.061, which states:

Rule 1.061. Choice of Forum
(a) Grounds for Dismissal. An action may be dismissed on the ground that a satisfactory remedy may be more conveniently sought in a jurisdiction other than Florida when:
(1) the trial court finds that an adequate alternate forum exists which possesses jurisdiction over the whole case, including all of the parties;
(2) the trial court finds that all relevant factors of private interest favor the alternate forum, weighing in the balance a strong presumption against disturbing plaintiffs' initial forum choice;
(3) if the balance of private interests is at or near equipoise, the court further finds that factors of public interest tip the balance in favor of trial in the alternate forum; and
(4) the trial judge ensures that plaintiffs can reinstate their suit in the *894 alternate forum without undue inconvenience or prejudice.
The decision to grant or deny the motion for dismissal rests in the sound discretion of the trial court, subject to review for abuse of discretion.
Fla. R. Civ. P. 1.061(a).
The cruise line defendants filed their motions under Rule 1.061. They argued that Miami-Dade County was an inconvenient forum and that the actions should be refiled either in the plaintiffs' respective home countries, or in the Netherlands Antilles. In the Cruz case the cruise line defendants also argued that Italy should be considered as a possible alternative forum. The four factors will be considered in turn.

V.
The first and fourth parts of the Rule 1.061 test are:
(1) the trial court finds that an adequate alternate forum exists which possesses jurisdiction over the whole case, including all of the parties;
....
(4) the trial judge ensures that plaintiffs can reinstate their suit in the alternate forum without undue inconvenience or prejudice.
Fla. R. Civ. P. 1.061(a)(1).
The proposed alternate fora are the respective home countries of the plaintiffs, namely, Guatemala (Chamo), Colombia (Vega), Costa Rica (Simpson), Peru (Tananta), and Honduras (Cruz), or the Netherlands Antilles. In Cruz Italy was also proposed.
The alternative fora are competent to hear these claims, and the cruise line defendants have agreed to submit to jurisdiction there. Thus the alternative fora are adequate and these parts of Rule 1.061 are satisfied.

VI.
The second part of the Rule 1.061 test is:
(2) the trial court finds that all relevant factors of private interest favor the alternate forum, weighing in the balance a strong presumption against disturbing plaintiffs' initial forum choice[.]
Fla. R. Civ. P. 1.061(a)(2).
"As stated in Kinney, the phrase `private interests' means adequate access to evidence and relevant sites, adequate access to witnesses, adequate enforcement of judgments, and the practicalities and expenses associated with the litigation." Fla. R. Civ. P. 1.061 Court Commentary.

A.
The Netherlands Antilles flunks this part of the Rule 1.061 test. The cruise line defendants conduct no business activities whatsoever in the Netherlands Antilles. There is not a single witness or a single scrap of evidence in the Netherlands Antilles relating to the facts of this case.
The cruise line defendants proposed the Netherlands Antilles as a possible forum because CSCS International and Prestige Cruise N.V. are incorporated there. Each corporation has a registered agent there. That is the totality of the corporate defendants' contacts with the Netherlands Antilles.
In Kinney, the Florida Supreme Court explained that corporate residency is a factor which can be considered in a forum non conveniens analysis, but is not dispositive. Writing in the context of a foreign corporation (Kinney Systems) which was doing business in Florida, the court said:
First, under our holding today it now is immaterial how "corporate residency" is determined, because a corporation's various *895 connections with Florida  if any  will only be factors to be weighed in the balance of conveniences, as outlined above.... Instead, the trial court should gauge the situation using the "balance of conveniences" approach.
674 So.2d at 93 (footnote omitted).
Applying that test, the Netherlands Antilles must be rejected as an alternative forum. These cases are not connected to the Netherlands Antilles by any evidence, witnesses, or relevant events. The fact that two of the corporate defendants are incorporated there deserves no weight under the circumstances of this case. There simply is no private interest factor which favors the Netherlands Antilles.

B.
The more substantial question is whether the private interest factors favor the respective plaintiffs' home countries instead of Miami-Dade County.
Our task is to determine the location of the evidence and witnesses. When this is done, it is clear that some evidence and witnesses are in Miami-Dade County, and some in the plaintiffs' home countries. The remainder of the evidence and witnesses are in other countries in Latin America or Europe. Further, Miami-Dade County is properly viewed as being the home jurisdiction for CSCS International at times relevant here. When all of this is considered, the balance of the private interests tilts in plaintiffs' favor.
Turning now to the pertinent facts, the plaintiffs became employed by Costa Crociere at various dates beginning in 1996. In 1996 Costa Crociere was an entirely Italian-owned passenger cruise line with its headquarters in Italy. Costa Crociere set up a subsidiary, CSCS International, which served as the employer for non-Italian seamen on the ships involved in this case.
The unusual fact about CSCS International is that its only employees are seamen stationed on Costa Crociere ships. CSCS International has no land-based employees anywhere in the world. According to the cruise line defendants, CSCS International has thousands of seamen on its payroll.
To carryout the personnel, payroll, and administrative functions for these employees, CSCS International entered into an agreement with another Costa subsidiary, Cruise Ships Catering and Services Caribbean, N.V. ("CSCS Caribbean"), to act as its agent. CSCS Caribbean had its sole office in Miami-Dade County at times relevant here.[18]
Four of the plaintiffs  Chamo, Vega, Simpson, and Tananta  came to Miami for processing prior to being sent to their assigned ships.[19] The four plaintiffs signed their employment contracts in Miami, with CSCS International being identified as the employer.[20] The four plaintiffs received their pre-employment physicals in Miami. Thereafter each plaintiff was transported to his assigned ship.
*896 According to the testimony of Wanda Ballestas, an administrator with CSCS Caribbean, CSCS Caribbean maintained all of the personnel files in Miami for CSCS International's employees. CSCS Caribbean handled the payroll functions in Miami. The employees were paid from a bank account in Florida.
When any seaman was injured, medical treatment and maintenance and cure were handled by CSCS Caribbean in Miami on behalf of CSCS International. If a representative was needed to testify in deposition or in court in connection with any such claim, CSCS Caribbean provided the representative. Ms. Ballestas testified that there were approximately forty to fifty such claims per year.
Under Kinney we are to look at substance, not form. See Kinney, 674 So.2d at 93. The substance here is that CSCS International maintained a Miami-based agent in Miami to perform its land-based functions. It is well-established that a person or corporation who maintains an agent in Florida is deemed to be present here. See § 48.193(1)(a), Fla. Stat. (1995). As a result of those activities, relevant evidence and witnesses exist in Florida.
The cruise line defendants say that during 1999 Costa Crociere transferred the responsibility for managing medical treatment and processing maintenance and cure claims to International Risk Services, Inc. ("IRSI"), a company owned by Laurence Klutz. IRSI is located in Florida and performs its work under contract to CSCS International. Thus medical treatment and maintenance and cure continue to be administered from South Florida for all of the plaintiffs. The records regarding those matters are maintained in Florida. Mr. Klutz is resident in Florida and is empowered to act as representative of CSCS International and other Costa entities in the case of litigated claims.[21] In the meantime, in 1997 Costa Crociere became 50% owned by Carnival Corporation, a Miami company. In 2000 Carnival became the 100% owner of Costa Crociere.
Turning now to the remainder of the private interest factors, the facts of each plaintiff's case must be examined. Plaintiff Chamo is a Guatemalan seaman who signed his employment contract with CSCS International in Miami in May 1996 and was assigned to the Costa Classica. He was injured in an accident off the coast of Italy in September of 1996. He was treated by the ship's doctor (an Italian national) and received further treatment in Italy and Guatemala. The witnesses to the accident are crew members who are believed to be citizens of Latin America and Italy. The plaintiff resides in Guatemala.
Plaintiff Vega is a Colombian seaman who signed his employment contract with CSCS International in Miami in September 1996 and was assigned to the Costa Marina. He was injured in an accident aboard ship off the Italian coast in September of 1996. He received treatment from the ship's doctor (an Italian national) as well as a doctor in Italy. He also received treatment and surgery in Florida. The witnesses to the accident are from Colombia, Honduras, and Guatemala. The plaintiff resides in Colombia.
Plaintiff Simpson is a Costa Rican seaman who signed his most recent employment agreement with CSCS International in Miami in May 1998 and was assigned to *897 the Costa Allegra.[22] He was injured in an accident on the high seas while sailing from the Netherlands to Brazil in November 1998. He received medical treatment in Brazil and Costa Rica as well as treatment and surgery in Miami. The witness to the accident is from Honduras. The plaintiff resides in Costa Rica.
Plaintiff Tananta is a Peruvian seaman who signed his employment contract with CSCS International in Miami in May 1999, and was assigned to the Costa Marina. He was injured in an accident off the coast of Argentina in February 2000. He was treated by the ship's doctor (an Italian national). He received treatment in Argentina, Brazil, and Peru, as well as back surgery in Florida. The witnesses are from Italy and Latin America. The plaintiff resides in Peru.
Plaintiff Cruz is a Honduran seaman who signed his employment contract with CSCS International in Honduras in February 2000 and was assigned to the Costa Marina. He was injured while the ship was cruising in international waters in September 2000. He was treated by the ship's doctors who were Italian and French nationals. He received treatment in Estonia and Honduras. The accident witnesses are believed to be citizens of Latin America or Italy. The plaintiff resides in Honduras.
The three ships involved in these cases do not have a fixed port from which they sail year-round. They sail varying itineraries in South America during the winter and Europe during the summer.
It is clear from the foregoing that some of the evidence and witnesses are in Florida. This includes CSCS International's records of the medical treatment and maintenance and cure for each plaintiff. Copies of each plaintiff's personnel records are located here. Ms. Ballestas and Mr. Klutz are witnesses with knowledge of these matters. They reside in South Florida. Guiseppe Campagna is the former personnel manager for CSCS Caribbean and serves as Florida agent for Costa-related entities. He likewise resides in Florida. Three of the plaintiffs received treatment in Miami.
Some of the evidence and witnesses are in the plaintiffs' home countries. This includes the five plaintiffs, who reside in their home countries. Each plaintiff received medical treatment in his home country. The treating personnel and medical records of home country treatment are located there.
The remaining witnesses on liability and treatment are abroad. The ships' doctors were Italian or French. The other seamen identified as witnesses are from Latin America or Italy. To the extent that a view of any of the ships may be desirable, they call at various ports in Europe or South America. Those ships do not call in Miami and do not call in the plaintiffs' home countries.
Regardless of whether each case is tried in Miami or the plaintiffs' home countries, there will be some evidence which is local and the rest must be brought in from abroad. From this standpoint litigation in Miami and the home countries are equally convenient.
Tipping the balance in plaintiffs' favor is the fact that CSCS International is properly viewed as a Miami-based company because its sole land-based office was located in Miami at the times pertinent to four of the five plaintiffs. The plaintiffs have thus *898 brought suit in CSCS International's home jurisdiction. As this court said recently:
We observe at the outset, as has one of our sister courts, "that this case involves the exceptional situation in which the defendant[ ][has] been sued in [his] own home forum and [has] objected that [his] home forum is inconvenient." Sanwa Bank, Ltd. v. Kato, 734 So.2d 557, 561 (Fla. 5th DCA 1999). A forum non conveniens argument coming from a party sued where he resides is both "puzzling" and "strange."
Cardoso v. FPB Bank, 879 So.2d 1247, 1250 (Fla. 3d DCA 2004) (citations omitted).
Although the cruise line defendants maintain that the crew personnel functions were transferred to Monaco in 1999, it is undisputed that the personnel functions relevant here  medical care, maintenance and cure  have continued to be administered from Florida, not Monaco, for CSCS International seamen. It is hard to understand the logic which says that it is convenient to administer these matters from Florida but inconvenient to litigate about them in Florida. Also tipping the balance toward the plaintiffs is the fact that since 2000 Costa Crociere has become 100% owned by Carnival Corporation, a Florida company.
While the private interest factors are close to equipoise, the balance tips in favor of the plaintiffs.

C.
In the Cruz case the cruise line defendant's argued that Italy should also be considered as a possible alternative forum. From what has been said in the previous section, the balance of private interest factors does not favor Italy.
The cruise line defendants have carefully avoided placing crew management functions inside Italy. Instead the crew personnel functions were managed from Florida until mid-1999, and medical care, maintenance and cure continue to be managed from Florida. When the cruise line defendants transferred other personnel management functions away from Florida, those functions were transferred to Monaco  not Italy.
Several of the plaintiffs received some of their medical treatment from Italian physicians on ship or shore, with other medical treatment occurring elsewhere. In Chamo, Cruz, and Tananta the accident witnesses are from Italy and Latin America, and in the remaining cases, Latin America alone. Evidence and witnesses are in Florida and the plaintiffs' home countries.
In sum, while there are some relevant witnesses in Italy, as explained in the previous section the private interest factors favor Miami.

VII.
The third element of the Rule 1.061 test is:
(3) if the balance of private interests is at or near equipoise, the court further finds that factors of public interest tip the balance in favor of trial in the alternate forum[.]
Fla. R. Civ. P. 1.061(a)(3).
This factor weighs in favor of the plaintiffs, not the defendants. The plaintiffs are Jones Act seamen. As previously stated, the Jones Act is federal legislation which allows an injured seaman to bring an action for personal injury sustained in the course of his employment. 46 U.S.C.App. § 688.
To determine whether the Jones Act is available to a seaman serving on a foreign flag vessel, the United States Supreme Court has fashioned a multipart choice-of-law *899 test. The United States Supreme Court said:
The Jones Act speaks only of `the defendant employer' without any qualifications. In Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254, however, we listed seven factors to be considered in determining whether a particular shipowner should be held to be an `employer' for Jones Act purposes:
(1) the place of the wrongful act; (2) the law of the flag; (3) the allegiance or domicile of the injured seaman; (4) allegiance of the defendant shipowner; (5) the place where the contract of employment was made; (6) the inaccessibility of a foreign forum; and (7) the law of the forum.
...
The Lauritzen test, however, is not a mechanical one. 345 U.S., at 582, 73 S.Ct. 921. We indicated that the flag that a ship flies may, at times, alone be sufficient. Id. at 585-586, 73 S.Ct. 929-930 The significance of one or more factors must be considered in light of the national interest served by the assertion of Jones Act jurisdiction. Moreover, the list of seven factors in Lauritzen was not intended as exhaustive. As held in Pavlou v. Ocean Traders Marine Corp., 211 F.Supp. 320, 325, and approved by the Court of Appeals in the present case, [Hellenic Lines Limited v. Rhoditis,] 412 F.2d [919], at 923 n. 7 [(5th Cir. 1969)], the shipowner's base of operations is another factor of importance in determining whether the Jones Act is applicable; and there well may be others.
Hellenic Lines Limited v. Rhoditis, 398 U.S. 306, 308-09, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970).
Substance controls this analysis, not form. "If ... the liberal purposes of the Jones Act are to be effectuated, the facade of the operation must be considered as minor, compared with the real nature of the operation and a cold objective look at the actual operational contacts that this ship and this owner have with the United States." Id. at 310, 90 S.Ct. 1731 (citation omitted).
The most striking fact about this case is that the cruise line defendants placed the plaintiffs on the payroll of CSCS International, which is properly viewed (for these purposes) as a Florida-based company.
Since CSCS International as the employer of these plaintiffs chose to have its only land-based business office in Florida, then CSCS International must play by the same rules as everyone else. "We see no reason whatsoever to give the Jones Act a strained construction so that this alien owner, engaged in an extensive business operation in this country, may have an advantage over citizens engaged in the same business by allowing him to escape the obligations and responsibility of a Jones Act `employer.'" Hellenic Lines Limited v. Rhoditis, 398 U.S. at 310, 90 S.Ct. 1731. Where, as here, an employer sets up its only office in the United States, places seamen on the payroll, and assigns them to ships overseas, those are Jones Act seamen and are entitled to the protections of that statute.[23]
None of the other factors in the Rhoditis test outweighs those just stated. Factor (1) is the place of the wrongful act. *900 398 U.S. at 308, 90 S.Ct. 1731. The injuries occurred on the high seas in each case, either in the vicinity of Italy or South America.
Factor (2) is the law of the flag. Id. The vessels flew the flag of Liberia. The Costa Marina has subsequently been re-flagged as an Italian-flagged vessel.
Factor (3) is the allegiance or domicile of the injured seamen. Id. These are the plaintiffs' home countries in Central or South America.
Factor (4) is the allegiance of the defendant shipowner. Id. This was Italy. However, as of 2000 the ultimate allegiance is to Carnival Corporation, an American company.
Factor (5) is the place where the contract of employment was made. Id. That was Miami for plaintiffs Vega, Chamo, Simpson, and Tananta, and Honduras for plaintiff Cruz.
Factor (6) is the inaccessibility of the foreign forum. Id. Miami and the home countries are accessible fora.[24] Italy is a distant and less accessible forum from the viewpoint of the plaintiffs.
Factor (7) is the law of the forum. Id. This factor has already been discussed. These are Jones Act seamen who are entitled to that benefit.
Although not assigned a number in the Rhoditis opinion, an eighth factor is the shipowner's base of operations. Id. at 309, 90 S.Ct. 1731. It appears that Costa Crociere's cruise operations are directed primarily from Italy.[25] However, Costa Crociere has not placed the plaintiffs on the payroll of any Italian company, placing them instead in the employ of an offshore corporation, CSCS International, which is administered from Florida and Monaco.
When the Rhoditis factors are considered, it is clear that the Jones Act applies here. This factor weighs in favor of denying the motion to dismiss.
In addition, Florida has a public interest in seeing that employees of Florida companies have a fair and effective forum in which to resolve disputes and obtain benefits to which the employee may be entitled.
The public interest factors weigh on the side of keeping the lawsuits here.

VIII.
We deal here with accidents occurring aboard ships which sail seasonally in different parts of the world. In these particular cases there is no one overwhelming land-based connection. Instead, there are evidence and witnesses in several scattered jurisdictions. The forum non conveniens issue must be sorted out by applying Rule 1.061 to the facts of the case.
Apply those factors here, we should recede from this court's earlier decision in Cruise Ships Catering and Services International, N.V. v. Tananta, 823 So.2d 258 (Fla. 3d DCA 2002). We should reverse the dismissal orders in the Chamo, Simpson, and Tananta cases, and affirm the orders denying the motions to dismiss in the Cruz and Vega cases. We should grant leave to the trial court in Tananta to impose the sanctions Judge Friedman out-lined *901 in his order dated June 20, 2003.[26],[27]
GODERICH and RAMIREZ, JJ., concur.
NOTES
[1] In September 2000, Carnival Corporation completed purchasing the stock of Costa Crociere. Since that time, "through an intermediary Italian holding company, Costa has been a fully owned subsidiary of Carnival Corporation, [which itself is] a Panamanian corporation with its principal place of business in Miami, Florida." Membreno v. Costa Crociere, S.p.A., 347 F.Supp.2d 1289, 1291 (S.D.Fla. 2004). However, Carnival does not own, operate, charter or maintain the vessels involved here, nor did it employ or supervise the plaintiffs. As the Membreno court noted, Costa Crociere's "contacts with Carnival are arms-length transactions that are necessitated by the separate corporate structures." Id.
[2] Until mid-1999 C.S.C.S. Caribbean N.V., another Netherlands Antilles corporation with an office in Miami did recruiting for CSCS and, in fact, recruited the claimants here for employment aboard the Costa ships. Prior to being put into liquidation in that year, C.S.C.S. Caribbean N.V. was also responsible for employee medical care, and providing maintenance and cure. These third-party medical claims administrative duties were transferred to IRSI in June 1999. At or about the same time, the manning function was transferred to a Monaco company called Cruise Ships Catering Services Management S.A.M.
[3] The affiants for CSCS, Laurence Klutz and Alberto Sacconaghi, have sworn that Curacao, Netherlands Antilles is CSCS' principal place of business, when in reality, CSCS is registered there and no employees physically exist at their shell office space. While CSCS' statement is somewhat disingenuous, litigant misconduct can be policed through Fla. Stat. § 57.105 (2003)and Fla. R.App. P. 9.410, with sanctions imposed if appropriate. On the other hand, litigant misconduct may not be ridden into a change of substantive law as the seamen have requested. This is especially so here because had CSCS been completely transparent from the beginning, it would have had no impact on the way these cases should have been or were decided. Whether CSCS does in fact "exist" in the Netherlands Antilles is irrelevant to the question of whether CSCS exists here in Miami, which it obviously does not. The plaintiffs-appellants have unfortunately spent a great deal of time and resources uncovering a legal nullity, and made much ado about nothing.
[4] The seamen's attorneys have argued that CSCS has restructured itself to avoid being sued by foreign seamen. Tax advantages notwithstanding, it is a stretch to suggest that a global enterprise of this size would go through such machinations solely to avoid anywhere from 40-50 seaman claims each year in American state courts. Even if jettisoning American courts in part motivated the layered corporate existence, retention of these foreign seamen's cases is simply not the answer, either for retaliatory or legal reasons or for sheer hubris found in the American conviction that our judicial system provides superior reckoning. As one court has observed, "the habitual generosity of American juries is not a reason to try a case here." Bautista v. Cruise Ship Catering Servs. Int'l, N.V., No. 03-60288-CIV, slip op. at 5 (S.D.Fla. November 18, 2003). It would naturally follow that organizing one's empire to protect against perceived excesses of our court system is likewise a permissible goal so long as legally achieved.
[5] Under the federal standard applicable to federal courts, there are seven factors to consider in deciding if the Jones Act is applicable to a claim. Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953). An eighth factor, the shipowner's base of operation, was added in Hellenic Lines Ltd. v. Rhoditis, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970).
[6] See also Kinney, 674 So.2d. at 89 ("we do believe that the general regulation of foreign activities of multinational corporations more properly is a concern of the federal government, at least where the corporation's connections to Florida are tenuous or nonexistent").
[7] Even if this distillation of Kinney is incorrect, and the Lauritzen-Rhoditis factors were to be considered in first examining if the Jones Act applies, our ultimate holding in this consolidated appeal would be the same. These eight factors were recently considered as to these exact corporate defendants-appellees  CSCS, Prestige and Costa Crociere  and the overwhelming majority of the judges sitting on the United States District Court for the Southern District of Florida have found that United States law was not applicable, and then found that the doctrine of forum non conveniens required the dismissal of personal injury claims brought by a foreign seaman while aboard these Italian-flagged Costa vessels sailing about on the seas or at a foreign port. See Membreno v. Costa Crociere, S.p.A., No. 03-61180-CIV, (S.D.Fla. Nov. 23, 2004) (Huck, J.); Hernandez v. CSCS Int'l, N.V., No. 03-20303-CIV (S.D.Fla. Dec. 8, 2003) (Graham, J.); Bautista v. Cruise Ships Catering & Serv. Int'l, N.V., 350 F.Supp.2d 987 (S.D. Fla. 2003) (Dimitrouleas, J.) aff'd 120 Fed.Appx. 786, 2004 WL 2157227 (11th Cir. Sept. 16, 2004) (table); Rodriguez v. Cruise Ships Catering & Serv. Int'l, N.V., 03-60288-CIV (S.D. Fla. Nov. 18, 2003) (Dimitrouleas, J., unpublished) aff'd 120 Fed.Appx. 786, 2004 WL 2157228 (11th Cir. Sept. 16, 2004) (table); see also Rey v. CSCS Int'l, N.V., 03-60157-CIV (S.D.Fla. Nov. 24, 2004) (Martinez, J.); Melbourne v. CSCS Int'l, N.V., No. 03-62200-CIV (S.D.Fla. Oct. 5, 2004) (Cooke, J.). Though as a state court we are not required to make this finding, we agree with these federal judges that the Costa cruise line defendants are no more Jones Act employers, than these claimants are Jones Act seaman.
[8] While the plaintiff seamen have proved that CSCS has a rather obscure corporate existence in the Netherlands Antilles, that does not translate into making CSCS a Florida corporation, or make Florida its principal place of business. CSCS has clearly outsourced its responsibilities to a variety of different components, some here (IRSI) in Hollywood, Florida, and some elsewhere in the world in Monaco. Hence, there is nothing "puzzling" or "strange" about a foreign cruise line defendant whose only tie to Florida is a former liquidated company (CSCS Caribbean, N.V.) from presently asserting forum non conveniens. See dissent at 898.
[9] Because the defendants-appellees were less than forthright about CSCS' existence in the Netherlands Antilles, the affidavits of Klutz and Sacconaghi are invalidated in part. Nevertheless, the affidavits submitted demonstrate that the defendants are amenable to service of process in the Netherlands Antilles or in one of these five South American countries, thus meeting the chief concern of the first prong of the Kinney test  "the ability to perfect service of process." Id. at 90. There is no allegation of falsity or any controversy over the affidavits on this front.
[10] The issue is not whether "the cruise line defendants conduct [ ] business ... in the Netherlands Antilles," see dissent at 894, but whether based on its clearly legal and permissible election to incorporate there, the cruise line defendants have a right to insist that the Netherlands Antilles be considered as a prospective alternate forum, among the other choices.
[11] While three claimants did visit Miami physicians, the record suggests this occurred in conjunction with or after consultation with counsel. The seamen's counsel have failed to dispute this or to demonstrate that these medical visits were independent decisions not generated in anticipation of litigation. Therefore, we cannot include these Florida medical visits on the private interest balancing.
[12] The dissent's concern that no relevant evidence may be found in the Netherlands Antilles is immaterial. See dissent at 894-95. The real question in a forum non conveniens inquiry is whether the relevant evidence and witnesses can be found in South Florida.
[13] The employment and injury dates are:

 Employed Injury Ship
 Chamo May 1996 September 1996 Costa Classica
 Vega September 1996 September 1996 Costa Marina
 Simpson May 1998 November 1998 Costa Allegra
 Tananta May 1999 February 2000 Costa Marina
 Cruz February 2000 August 2000 Costa Marina

[14] Although it makes no difference to the analysis, at the time of plaintiff Chamo's accident the Costa Classica was owned by another Italian corporation, Mediterranean Cruise Lines, S.p.A., but that company subsequently merged into Costa Crociere, S.p.A.
[15] Plaintiff Vega's employment contract is with an entity named Cruise Ships Catering and Services, N.V. ("CSCS"). Both sides say that this is CSCS International, but do not explain why "International" is omitted from the name of the business entity on the employment contract.
[16] In Simpson the trial court favored denial of the motion but concluded that dismissal was required by Tananta.
[17] There is more to this issue than at first meets the eye. In Kinney, Florida adopted the federal doctrine of forum non conveniens. 674 So.2d at 93. Thus in applying Kinney, opinions of the federal courts on forum non conveniens issues are persuasive although not binding. Id.

The problem is that the federal courts of appeals disagree on how to perform the forum non conveniens analysis in a case in which the Jones Act applies:
Several circuits hold that if the Jones Act applies, the claim may not be dismissed even on the grounds of forum non conveniens. Other courts, however, hold that choice of law is a part of a forum non conveniens analysis so that even if the Jones Act or U.S. law applies, the case can be dismissed.
1 Thomas J. Schoenbaum, Admiralty and Maritime Law § 6-13, at 311 (4th ed.2001) (footnotes omitted).
The federal Eleventh Circuit follows the former view, as reflected in our quotation of federal Eleventh Circuit precedent in Henry. See Henry, 851 So.2d at 734-35. In the federal Eleventh Circuit, if the plaintiff is a Jones Act seaman, that fact is dispositive and the case cannot be dismissed for forum non conveniens.
The Schoenbaum treatise asserts that the federal Eleventh Circuit view is inconsistent with the United States Supreme Court decision in Piper Aircraft Co. v. Reyno, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). Schoenbaum argues that after Reyno, the fact that a plaintiff is a Jones Act seaman is one factor to be considered in a forum non conveniens analysis but is not dispositive. The Second and Fifth Circuits have so held. See 1 Thomas J. Schoenbaum, supra, § 6-13 at 314 & n. 26.
The Schoenbaum analysis is persuasive. We must follow the rule of Piper Aircraft Co. v. Reyno on forum non conveniens. Thus we must recede from that part of Henry which (relying on federal Eleventh Circuit precedent) states that there can be no forum non conveniens dismissal in a maritime case where United States law (including the Jones Act) applies. The applicability of United States law is one factor to be considered, but is not dispositive.
[18] CSCS Caribbean shared office space in Miami with another Costa Crociere subsidiary, Costa Cruise Lines N.V. At the times relevant here, Costa Cruise Lines N.V. had approximately 70-100 employees in its Miami office. It had a budget of approximately $5.5 million for marketing and ticket issuance for the approximately 50,000-55,000 passengers from the United States who sail on Costa Crociere ships annually.
[19] The exception was plaintiff Cruz, who traveled directly from his home country of Honduras to his assigned ship.
[20] It was incorrectly stated in the Tananta panel opinion that Tananta signed his employment contract in Peru. While the contract so states, the cruise line defendants concede that he signed in Miami.
[21] The cruise line defendants state that the remaining personnel functions of CSCS International have been transferred to Monaco.
[22] Plaintiff Simpson's initial employment with CSCS International began in Miami in 1996. He first served on the Costa Romantica when it was based in Ft. Lauderdale, followed by service on the Costa Victoria, when it was based in Ft. Lauderdale.
[23] The only arguable exception is plaintiff Cruz, who signed his employment contract in Honduras in February 2000 and proceeded directly to his assigned ship. According to the cruise line defendants, by this time the personnel and payroll functions were being administered from Monaco, while medical treatment and maintenance and cure continued to be administered in Florida by IRSI.
[24] The Netherlands Antilles is not an accessible forum within the meaning of Rhoditis, for neither side has any meaningful contact with that jurisdiction and it is both pointless and burdensome to litigate there.
[25] The record contains indications that Carnival Corporation has become involved to a limited extent in operational matters of Costa Crociere since its acquisition of ownership.
[26] The majority opinion in footnote three appears to acknowledge that a trial court has the power to impose sanctions where false affidavits have been submitted. In its conclusion, however, the majority opinion simply directs that the five cases be dismissed  apparently without any sanctions whatsoever.
[27] The majority opinion says, "While three claimants did visit Miami physicians, the record suggests this occurred in conjunction with or after consultation with counsel. The seamens' counsel have failed to dispute this or to demonstrate that these medical visits were independent decisions not generated in anticipation of litigation." Majority opinion at 887 n. 11. See also id. at 878.

As to the three plaintiffs referred to by the majority opinion, plaintiff Simpson's affidavit states that he was examined by a board certified orthopedic surgeon in Miami. The physician "told me that the first [arthroscopic] surgery that was performed in my country had not been done correctly. Therefore, I wanted my medical care and treatment here in Miami, Florida." Simpson R. 1352.
Plaintiff Tananta's affidavit states that he was ordered by the defendants to have his medical treatment in Peru but did not wish to have treatment there. Tananta R. 258. His back surgery was performed in Florida. Id. at 259.
Plaintiff Vega testified in deposition that he requested treatment from defendants and received none. Prestige Cruises, N.V. v. Vega Appendix 42. He retained counsel who arranged treatment for him in Florida. Id. at 42-47.
The majority opinion loses sight of the fact that when the employer has wrongly withheld maintenance and cure, it is the job of counsel to see that the seaman receives needed treatment.