734 So.2d 557 (1999)
SANWA BANK, LTD., Appellant,
v.
Shigeru KATO, Sunshine State Resort Holding, Inc., etc., et al., Appellees.
No. 98-1005.
District Court of Appeal of Florida, Fifth District.
June 4, 1999.
*558 Guy A. Rasco, Jennifer R. Coberly, John A. Thornton, of Zuckerman, Spaeder, Taylor & Evans, LLP, Miami, for Appellant.
T. Todd Pittenger and Terry C. Young, of Lowndes, Drosdick, Dostor, Kantor & Reed, P.A., Orlando, for Appellees, Sunshine State Resort Holding, Inc., Florida Windermere, Inc., and Florida Deer Run, Inc.
Mercer K. Clarke, William J. Dimmig, of Clarke, Silverglate, Williams & Montgomery, Miami, for Appellee, Shigeru Kato.
No Appearance for Appellee, Takaski Kitazawa.
GRIFFIN, C.J.
Sanwa Bank, Ltd., ["Sanwa"] appeals an order dismissing its action on the basis of forum non conveniens. It further appeals an order denying, without a hearing, a motion for a temporary injunction filed by Sanwa. We affirm in part and reverse in part.
This case involves a loan made by Sanwa to Onjuku Yakatayama Country Club Co., Ltd., ["Onjuku Ltd."][1] in the amount of 3,000,000,000 yen.[2] The loan was made on or about July 11, 1990. The purpose of the loan was the purchase of equipment, for a golf course in Japan which Onjuku Ltd. was developing. The loan was personally guaranteed by Shigeru Kato ["Kato"], the president and sole stockholder of Onjuku Ltd. Kato not only signed the agreement as guarantor, but specifically agreed that "[he] bears joint liability for the performance of this obligation." The loan was to be repaid in full by July 11, 1992.[3]
Onjuku Ltd. apparently never made regular payments on the loan and ultimately defaulted. Several extensions of the due date were given and amendments to the loan ultimately provided for an extension of the repayment date to June 30, 1995 ["the final due date"]. As part of the these extensions, Kato and Onjuku Ltd. also signed an "Undertaking Regarding a Pledge of Shares" ["the share agreement"] on August 31, 1993 and an "Undertaking Regarding Repayment of Loans" ["the loan renegotiation agreement"] on December 17, 1993. The share agreement obligated Kato to obtain the bank's consent prior to transferring his ownership of 2,000 shares in Onjuku Golf Club K.K. to any third party.
Sanwa asserts in its complaint that, in fact, the loan proceeds were not used to purchase equipment, but were instead transferred to other companies owned by Kato, and that ultimately the funds were used to purchase two golf courses located in Central Florida. Specifically, Sanwa asserts *559 that from October 1990 through April 1991, Kato transferred in excess of 2,000,000,000 yen from the loan proceeds to Wako Kanko Co., Ltd. ["Wako Ltd."], a second company wholly-owned by Kato. Wako, in turn, allegedly transferred 1,780,845,000 yen (approximately $12,900,000 U.S. dollars) to Sunshine State Resort Holding, Inc. ["Sunshine Holding"], which used the money to purchase the Windermere Golf Course and the Deer Run golf course, both of which are located in Central Florida.
In late 1997, Sanwa brought the instant action against Kato, Sunshine Holding, Windermere and Deer Run. Neither Onjuku Ltd. nor Wako Ltd. was made a party to the action. Count I of Sanwa's complaint was styled as a claim for breach of contract. The count alleged that Kato had breached the guaranty by the failure to repay the loan. The count further alleged that Sunshine, Windermere and Deer Run [collectively "the Florida corporate defendants"] were Kato's "alter egos" and that they were therefore also obligated on Kato's guarantee. Count II was an action based on the same "alter ego" theory.
Kato and the Florida corporate defendants filed an amended motion to dismiss the complaint for failure to state a cause of action. Shortly thereafter, the Florida corporate defendants also filed a motion to dismiss based on forum non conveniens. The motion alleged that Japan was the more appropriate forum for trial of this action because: (1) the loan underlying Kato's guaranty had been made in Japan, by a Japanese bank (Sanwa), to a Japanese corporate borrower (Onjuku Ltd.); (2) Sanwa had been engaged in litigation in Japan with Kato and Onjuku Ltd. since November 18, 1997; (3) Kato was challenging Florida's personal jurisdiction over him; (4) the Florida corporate defendants were not signatories to the loan or the guaranty which formed the basis of the action; and (5) the Florida action was premature, in that it represented an attempt to collect the debt from the Florida corporate defendants prior to any determination of the amount due on the underlying obligation. As an alternative to dismissal of the action, the Florida corporate defendants asked for entry of an order staying the litigation until such time as the liability of Kato and Onjuku Ltd. for the underlying debt had been established in a Tokyo district court.
Sanwa filed an amended complaint on or about February 11, 1998, which added Takasi Kitazawa ["Kitazawa"], Kato's brother-in-law, as a defendant and added a number of additional counts. The claim against Kitazawa is based on the allegation by Sanwa that Wako Ltd., which is wholly-owned by Kato, transferred its entire interest in Sunshine Holding to Kitazawa on February 14, 1994, approximately two months after Kato had executed the December 17, 1993 loan renegotiation agreement. The complaint as amended contained seven counts. Four counts were brought against Kato and the Florida corporate defendants: (1) breach of contract, based on the alleged breach of the guaranty; (2) account stated; (3) breach of contract, based on the alleged breach of December 17, 1993 loan renegotiation agreement;[4] and (4) unjust enrichment. Sanwa also brought claims against all defendants, including Kitazawa, for violation of Florida's Uniform Fraudulent Transfer Act, see §§ 726.101, et. seq., Florida Statutes, and for constructive trust. The only other claim contained in the complaint was a claim for unjust enrichment against Kitazawa.
The lower court conducted a hearing on the forum non conveniens issue, and allowed subsequent written argument. Sanwa argued that dismissal of the case in favor of a Japanese forum was improper because (1) there was no adequate alternative *560 forum, given that Japan had no jurisdiction over the Florida corporate defendants or the subject matter of the amended complaint; and (2) the witnesses needed to prove many of these claims, such as the claim for violation of Florida's Uniform Fraudulent Transfer Act and the claims for unjust enrichment, were located in Florida. Sanwa also contended that the forum selection clause contained in Sanwa's contract with Onjuku Ltd. permitted, but did not require, Sanwa to bring suit in Japan.
Defendants contended that in reality all of the claims made in this case concern acts which occurred in Japan and not Florida. They asserted that the only connection this case has with Florida is that the golf courses are in Florida and the corporate transfers may have been memorialized after the fact in Sunshine's corporate records, which are maintained in Florida. Defendants argued that Florida itself could not be considered an adequate forum, since Florida has no jurisdiction over non-residents such as Onjuku Ltd., Wako Ltd., Kato and Kitazawa, and they were necessary or indispensable parties to any action to resolve Sanwa's claims, which rested on an "alter ego" theory.
Defendants' written response also took issue with a number of factual assertions made by Sanwa. They asserted that there was no proof on this record that Kato or the other defendants had wrongfully used monies from Sanwa to purchase the Florida golf courses. Defendants also pointed out that the record failed to show the source of the funds used to purchase the Windermere and Deer Run golf courses, since those monies had come from Wako Ltd., which was not a party to this action. Kato and the Florida corporate defendants further emphasized that Sanwa was involved in "every aspect" of the purchase of the Florida golf courses, since it not only handled the wire transfers which were used to make the purchase, but served as a "business advisor" and negotiated the sales, for which it received a fee of $527,645.99. Defendants characterized the litigation as an attempt to acquire an "after the fact" mortgage on the golf courses, notwithstanding the fact that the original loan to Onjuku Ltd. was secured only by Kato's guaranty and the fact that the August 1993 share agreement signed by Kato addressed only the Onjuku Ltd. stock and not stock in any other corporation.
As part of their response, Kato and the Florida corporate defendants also urged the court to address a motion to dismiss and to strike the amended complaint, which they had filed contemporaneously with their forum non conveniens memorandum. They asserted that the motion shows that there are fatal defects in all of Sanwa's causes of action, and that these defects are a factor to be considered in determining whether to grant a forum non conveniens dismissal.
On March 18, 1998, the court apparently asked Kato and the Florida corporate defendants to submit a proposed order granting their motion for forum non conveniens dismissal. Kato and the Florida corporate defendants submitted a proposed order on March 23, 1998. That same day, Sanwa moved for a temporary injunction to preclude the sale of the Windermere and Deer Run golf courses and the transfer of the stock in the corporations which owned the golf courses.
In its detailed twelve-page order dated April 2, 1998, the court dismissed the action on the basis of forum non conveniens. The court found, inter alia, that Japan constituted an adequate alternative forum; most of the witnesses, etc., were located in Japan; virtually all of the acts complained of occurred in Japan; numerous necessary parties were not subject to suit in Florida, rendering certain causes of action (i.e. those based on an alter ego theory) legally insufficient; the parties had a mandatory forum selection clause which required suit to be brought elsewhere; Sanwa should be required to establish liability on the underlying claim before bringing suit in Florida; the Florida corporate defendants' lack of *561 amenability to suit in Japan did not preclude dismissal of the action; Sanwa's inability to maintain certain causes of action in Japan did not preclude dismissal, since other remedies were available; Sanwa would have an unfair strategic advantage if the lawsuit remains in Florida, while many necessary witnesses are in Japan; and Sanwa was not entitled to prejudgment attachment or to a temporary injunction because of the availability of an adequate remedy at law. The order provided that, in the event this court found that the action should not have been dismissed on the basis of forum non conveniens, the court was staying prosecution of the action until resolution of the action in Japan. In a separate order, the court also denied all of Sanwa's various motions.
At the outset, it should be noted that this case involves the exceptional situation in which the defendants have been sued in their own home forum and have objected that their home forum is inconvenient. As another court has observed, a forum non conveniens argument coming from a party sued where he resides is both "puzzling" and "strange." Lony v. E.I. DuPont de Nemours & Co., 935 F.2d 604, 608 (3d Cir.1991). We agree that the lower court erred in dismissing the complaint on the basis of forum non conveniens.
The federal doctrine of forum non conveniens was adopted in Florida in Kinney System, Inc. v. Continental Insurance Co., 674 So.2d 86 (Fla.1996). See also Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). Kinney System applies a four-step test to determine whether Florida is an inconvenient forum. Under Kinney System, a finding that Florida is an inconvenient forum results in the dismissal of the action. 674 So.2d at 92. Pursuant to Kinney System, a court entertaining a forum non conveniens motion must (1) determine that an adequate alternative forum exists; (2) consider all relevant factors of private interest, with the presumption against disturbing the plaintiffs initial choice of forum; (3) assuming it finds the balance of private interests in equipoise, determine whether factors of public interest tip the balance in favor of trial in another forum; and (4) if the balance favors such a forum, ensure the plaintiff may reinstate his suit in that forum without undue inconvenience or prejudice. Id. at 90. The trial court exercises sound discretion in determining whether or not to dismiss a case for forum non conveniens. Owens-Corning Fiberglas Corp. v. Ballard, 23 Fla. L. Weekly D1077, ___ So.2d ___, 1998 WL 204710 (Fla. 4th DCA 1998); Ciba-Geigy Ltd. v. Fish Peddler, Inc., 691 So.2d 1111, 1115 (Fla. 4th DCA), review denied, 699 So.2d 1372 (Fla.1997); Fla. R. Civ. P. 1.061(a) (1997). Kinney System has been implemented by the enactment of Florida Rule of Civil Procedure 1.061, which became effective on January 1, 1997.
Sanwa's principal argument on appeal concerns the first prong of Kinney System's four-step testthe requirement that there be an adequate alternative forum, which is a prerequisite to the application of forum non conveniens. Gulf Oil Corp., 330 U.S. at 506-507, 67 S.Ct. 839 (doctrine of forum non conveniens presupposes at least two forums in which the defendant is amenable to process). The burden of proving that there is an adequate alternative forum rests on defendant. This requirement mandates a foreign forum which is both "available" and "adequate." In re Air Crash Disaster Near New Orleans, La., 821 F.2d 1147, 1165 (5th Cir.1987) (en banc), partially vacated on other grounds, Pan American World Airways, Inc. v. Lopez, 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d 400 (1989). An alternative forum is "available" when the entire case and all parties are amenable to process and come within the jurisdiction of the forum. In re Air Crash Disaster, 821 F.2d at 1165, 15, Wright, Miller & Cooper, Federal Practice and Procedure s. 3828 (2d ed.1986); Broadcasting Rights Int'l Corp. v. Societe du Tour de France, S.A.R.L., 675 F.Supp. 1439, *562 1449 (S.D.N.Y.1987) (generally speaking, adequate alternative forum is one in which both parties are subject to personal jurisdiction and service of process). An alternative forum is "adequate" when the parties will not be deprived of all remedies or treated unfairly. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255, 102 S.Ct. 252, 265, 70 L.Ed.2d 419 (1981). If there is no adequate alternative forum in which the action can be conducted against all defendants, the inquiry ends and the motion to dismiss must be denied. PT United Can Co. v. Crown Cork & Seal Co., 138 F.3d 65 (2d Cir.1998).[5]
In this case, Japan is the only forum which has the potential to serve as an alternative to a Florida forum. The question posed here is whether Japan is an "available" forum. If only some of the defendants are subject to suit in Japan, Japan cannot be considered an "available" forum. See In re Air Crash Disaster, 821 F.2d at 1168-1169.
The trial court found that Japan would be an adequate alternative forum, but in making this determination the court plainly contemplated that the Florida corporate defendants would not be involved in the action in Japan. The trial court decided that the action should be brought only after Sanwa had established the liability of the Japanese defendants. Although this solution is logical, given the nature of the claims pleaded by Sanwa, it begs the question. Plainly, the suit against the Florida defendants cannot be dismissed because Florida is an inconvenient forum where no other forum is available. There may, however, be other bases on which to dismiss the entire case or certain claims or certain parties but not forum non conveniens.
We agree with Sanwa that the choice of forum clause contained in Onjuku Ltd.'s original loan agreement, which was guaranteed by Kato, does not require that the suit be dismissed in favor of a Japanese forum. The clause, which is contained in Article 12 of the agreement, states:
In the event the institution of a lawsuit in connection with a transaction covered by this Agreement becomes necessary, I/we shall agree that the Court having the jurisdiction in the locale in which the head office or branch office of your Bank is located shall be the competent Court.
This provision is not, by its terms, a "mandatory" forum selection clause. The general rule is that forum selection clauses are considered permissive, rather than mandatory, where they lack words of exclusivity. See Northern Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co., 69 F.3d 1034 (9th Cir.1995); John Boutari and Son, Wines and Spirits, S.A. v. Attiki Importers and Distributors, Inc., 22 F.3d 51 (2d Cir.1994); Hunt Wesson Foods, Inc. v. Supreme Oil Co., 817 F.2d 75 (9th Cir. 1987).
Sanwa next argues that the trial court erred in denying its motion for a temporary injunction without an evidentiary hearing. Sanwa argues that, based on the allegations contained in the complaint and in its motion for temporary injunctive relief, it is entitled to a preliminary injunction to preserve the status quo pending a final hearing. We disagree. The amended complaint is completely lacking in allegations of ultimate fact that would support a cause of action on any of the named theories. Indeed, all of the counts are of doubtful legal viability. Before Sanwa can expect an evidentiary hearing on an application for an injunction, it must state at *563 least one legally sufficient claim and plead a cognizable basis for the equitable relief it seeks.
Finally, we address the lower court's decision to stay the Florida case pending adjudication of the issues involving the Japanese parties. In its brief, the Florida corporate defendants have conceded error on this point. Apparently, the Florida defendants have concluded that, if the case proceeds, they can dispose of Sanwa's claims to their assets more swiftly and more surely than by awaiting the judgment of the Japanese courts.
REVERSED and REMANDED.
COBB and THOMPSON, JJ., concur.
NOTES
[1] Onjuku Ltd.'s name appears in several permutations in the record including Onjuku Golf Club K.K. and Onjuku Yakatayama Country Club, Ltd., but these all appear to be the same company.
[2] This appears to be approximately $20,000,000 in United States currency.
[3] All of the loan documents are in Japanese, but translations were submitted for the purposes of this appeal. The accuracy of these translations does not appear to be in dispute.
[4] This count was apparently based on Kato's refusal to liquidate the Florida corporations to repay the loans and on Waco Ltd.'s alleged transfer (through Kato) of its ownership interest in Sunshine to Kato's brother-in-law, Kitazawa.
[5] The sole exception found to this requirement concerns the situation in which the plaintiff itself is a foreign government that has failed to provide itself with an adequate alternative forum through its own judiciary. See, e.g., Islamic Republic of Iran v. Pahlavi, 62 N.Y.2d 474, 478 N.Y.S.2d 597, 467 N.E.2d 245 (1984), cert. denied, 469 U.S. 1108, 105 S.Ct. 783, 83 L.Ed.2d 778 (1985). This is an admittedly rare situation in which equitable concerns require application of the doctrine notwithstanding the lack of an alternative forum. Kinney System, 674 So.2d at 95 n. 4. The exception is obviously inapplicable here.