COPE, J.
(concurring in part and dissenting in part).
Respectfully, the majority opinion is contrary to the decisions of the Florida Supreme Court in Kinney System, Inc. v. Continental Ins. Co., 674 So.2d 86 (Fla.1996), and the United States Supreme Court in Hellenic Lines, Ltd. v. Rhoditis, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970).
I.
The cruise line (Costa Crociere, S.p.A.) created a subsidiary (CSCS International) which served as the employer of each of the five plaintiffs. At times relevant here, this subsidiary had its land-based business operations in South Florida — in offices no more than a forty-five minute drive from this courthouse. While the appellees (collectively, “the cruise line defendants”) claim that CSCS International has moved to Monaco, it is undisputed that CSCS International continues to manage the medical care, and maintenance and cure for these plaintiffs from right here in South Florida.
Second, each plaintiff has brought claims under the Jones Act, 46 U.S.C.App. § 688. This is federal legislation which allows an injured seaman to bring an action for personal injury sustained in the course of his employment. In deciding whether a seaman is entitled to the protection of the Jones Act, the United States Supreme Court decision in Rhoditis directs that we consider the substance of the ship line’s contacts with the United States and are not to be distracted by matters of form.
*890 Third, each plaintiff properly filed suit in Miami-Dade County, as the law allows them to do. There is no claim here that there is any absence of jurisdiction or any improper venue as to the cruise line or the other defendants. To read the majority opinion, one would conclude that Costa Crociere is a stranger to Florida but that is not the case. Not only does Costa Crociere have substantial business contacts here, but in 1997 Costa Crociere became 50% owned by Carnival Cruise Line (which is headquartered in Miami) and in 2000, Costa Crociere became 100% owned by Carnival. Suit was properly filed here.
Fourth, the cruise line defendants filed motions to dismiss for forum non conve-niens. They argued in each instance that the action should be dismissed with leave for the plaintiff to refile in the Netherlands Antilles (where, it turns out, none of the cruise line defendants has any business operation whatsoever) or in the plaintiffs home country. In plaintiff Chamo’s case, they also suggested Italy as an alternative forum. In reality, it is at least as convenient to litigate these cases in Miami as in the plaintiffs’ respective home countries or Italy. The public interest factors likewise favor litigation here. These are Jones Act seamen who are entitled to the benefit of the federal statute. Further, Florida law favors providing a fair and effective remedy in the circumstances present here.
In accordance with the Kinney and Rho-ditis decisions, there should be no dismissal for forum non conveniens.
II.
Each of the plaintiffs brought his own individual lawsuit against the cruise line defendants alleging a shipboard injury on a Costa Crociere ship. The accidents occurred on various dates between September 1996 and August 2000.[13]
As of 1996, Costa Crociere, S.p.A. was an Italian-owned company with its headquarters in Italy. It owned the three ships on which the plaintiffs were injured.[14]
In 1997, Carnival Corporation — a Miami company — purchased 50% of the stock of Costa Crociere. In 2000 Carnival purchased the remaining shares, so that Costa Crociere is now held as a Carnival subsidiary.
Under the Jones Act, “Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury....” 46 U.S.CApp. § 688(a). The proper defendant in such an action is the seaman’s employer. See id. An action under the Jones Act is cognizable in state court. See Garrett v. Moore-McCormack Co., 317 U.S. 239, 243-44, 63 S.Ct. 246, 87 L.Ed. 239 (1942).
i Each plaintiff had a written employment agreement with Cruise Ships Catering and Services International N.V. (“CSCS Inter *891 national”) as the employer.[15] Each plaintiff sued CSCS International for his Jones Act claim and for maintenance and cure.
Each plaintiff also asserted a claim for unseaworthiness. Such a claim may be made against the owner or bareboat charterer of a vessel. Each plaintiff sued Cos-ta Crociere S.p.A., which was (as already stated) the owner of the three vessels at issue here.
At the time of the plaintiffs’ respective accidents, Costa Crociere had chartered the three vessels under bareboat charter agreements to a Costa Crociere subsidiary, Prestige Cruises, N.V. Each plaintiff sued Prestige as the bareboat charterer.
In each case the cruise line defendants moved to dismiss for forum non conve-niens. They asserted in substance that CSCS International and Prestige Cruises N.V. had their principal places of business in Curacao, Netherlands Antilles and no business presence in Florida. They argued that the principal place of business for Costa Crociere S.p.A. was Italy. They contended that the relevant evidence and witnesses would be found, for the most part, in foreign countries or in the respective plaintiffs’ home countries. The respective plaintiffs opposed the motions.
In Tananta, the trial court denied the motion to dismiss for forum non conve-niens and the cruise line defendants appealed. In 2002 a panel of this court reversed. See Cruise Ships Catering and Services International, N.V. v. Tananta, 823 So.2d 258 (Fla. 3d DCA 2002).
On remand, Tananta moved for relief from judgment on the ground that the cruise line defendants had perpetrated a fraud on the court by filing false affidavits in support of the forum non conveniens motion. The trial court conducted a four-day evidentiary hearing in May 2003 and concluded that the motion was well taken. The court found that the cruise line defendants’ representatives had submitted affidavits falsely claiming that CSCS International and Prestige Cruises, N.V. had their principal places of business in the Netherlands Antilles when in fact they had no business operations in the Netherlands Antilles whatsoever. Contrary to the cruise line defendants’ representations, there are no witnesses or evidence in the Netherlands Antilles relating to these cases.
The court also found that another of Costa Crociere’s agents, Guiseppe Cam-pagna,
in the performance of his duties with respect to crew management, disregards corporate formalities by indiscriminately utilizing the letterheads of at least seven different alleged companies within the Costa corporate structure, including Costa, Costa Crociere, CSCS International, N.V., CSCS Carribean, N.V., Zer-bone Catering, Costa Cruise Lines, N.V. and Marine & Mercantile Enterprises, Inc.
The Court finds that insufficient formalities are observed with respect to Mr. Campagna’s employment among and between, and his work conducted on behalf of, the various Costa-related corporations, and that said employment and work changes indiscriminately.
Order, June 20, 2003, at 13.
The trial court concluded, however, that without leave of this court the trial court was bound by the law of the case to enter *892 a dismissal in accordance with this court’s 2002 panel opinion. The court went on to say, in part:
But for the Third District Court of Appeals decision in Tananta, obtained by the fraud of the Defendants but nevertheless currently binding upon this Court, this Court would enter sanctions against the Defendants, [and Defendants’ representatives] Mr. Klutz and Mr. Sacconaghi as follows:
A. Strike the affidavits of Klutz and Sacconaghi filed in this case; order that such testimony never be provided or used again; and require Mr. Klutz, Mr. Sacconaghi, and the Defendants to give written notice of the mere paper incorporation of the entities at issue, and absence of employees, offices and operations of said entities, in the Netherlands-Antilles, as well as copies of this Order, to all court clerks, judges and opposing parties in cases past, present or future, involving Costa and any of the entities named in this Order.
B. Award Plaintiff his attorneys fees and costs incurred as a result of or related to defendants’ filing of the false affidavits and testimony noted herein, the preparation of plaintiffs motion for consideration of evidence of fraud, the preparation for attendance at the multiple hearings held related to the issue of Defendants’ fraud, as well as all appellate proceedings necessitated by the fraud issue, including expense incurred by Defendants’ emergency motion to stay this court’s hearing on the issue of Defendants’ fraud.
C. Order Mr. Klutz and Mr. Sacco-naghi to perform community service at a local seafarers’ house (or other similar charitable organization serving crew persons) and require the Defendants to make an appropriate monetary donation to said charity.
However, as this Court finds that it is without sufficient power to enforce the foregoing ruling of this Court, this Court abstains from entry of any sanctions against Defendants, Mr. Klutz and Mr. Sacconaghi at this juncture and instead makes its findings available for review and consideration by the Third District Court of Appeal pursuant to Ohio Casualty Group v. Parrish, 350 So.2d 466 (Fla.1977).
Id. at 16-17.
In accordance with this court’s mandate, the trial court dismissed the Tananta action and Tananta has appealed. The cruise line defendants have petitioned for a writ of certiorari, challenging the June 20, 2003 order.
In the meantime, in the other pending cases the respective trial judges denied dismissals for forum non conveniens in the Vega and Cruz cases, while granting such motions in the Simpson and Chamo cases.[16] The losing parties in each instance have appealed.
The appeals in Tananta, Vega, and Cruz were consolidated under this court’s appeal number 3D03-1799. A panel of the court heard argument in that consolidated appeal, and other panels heard argument in Simpson and Chamo.
This en banc proceeding followed.
III.
As a preliminary matter, I agree with that part of the majority opinion which holds that Kinney System, Inc. v. Continental Ins. Co., 674 So.2d 86 (Fla.1996), is *893 controlling on the issue of forum non con-veniens in a maritime case filed in Florida courts. That conclusion is compelled by American Dredging Co. v. Miller, 510 U.S. 443, 114 S.Ct. 981, 127 L.Ed.2d 285 (1993). I concur in receding from Henry v. Windjammer Barefoot Cruises, 851 So.2d 731 (Fla. 3d DCA 2003), to the extent of any inconsistency.[17]
IV.
“Forum non conveniens is a common law doctrine addressing the problem that arises when a local court technically has jurisdiction over a suit but the cause of action may be fairly and more conveniently litigated elsewhere.” Kinney System, Inc. v. Continental Ins. Co., 674 So.2d at 87 & n. 1 (Fla.1996). The Kinney decision adopted the federal forum non conveniens doctrine. Id. at 93. The Kinney test for forum non conveniens has been codified in Florida Rule of Civil Procedure 1.061, which states:
Rule 1.061. Choice of Forum
(a) Grounds for Dismissal. An action may be dismissed on the ground that a satisfactory remedy may be more conveniently sought in a jurisdiction other than Florida when:
(1) the trial court finds that an adequate alternate forum exists which possesses jurisdiction over the whole case, including all of the parties;
(2) the trial court finds that all relevant factors of private interest favor the alternate forum, weighing in the balance a strong presumption against disturbing plaintiffs’ initial forum choice;
(3) if the balance of private interests is at or near equipoise, the court further finds that factors of public interest tip the balance in favor of trial in the alternate forum; and
(4) the trial judge ensures that plaintiffs can reinstate their suit in the *894 alternate forum without undue inconvenience or prejudice.
The decision to grant or deny the motion for dismissal rests in the sound discretion of the trial court, subject to review for abuse of discretion.
Fla. R. Civ. P. 1.061(a).
The cruise line defendants filed their motions under Rule 1.061. They argued that Miami-Dade County was an inconvenient forum and that the actions should be refiled either in the plaintiffs’ respective home countries, or in the Netherlands Antilles. In the Cruz case the cruise line defendants also argued that Italy should be considered as a possible alternative forum. The four factors will be considered in turn.
V.
The first and fourth parts of the Rule 1.061 test are:
(1) the trial court finds that an adequate alternate forum exists which possesses jurisdiction over the whole case, including all of the parties;
[[Image here]]
(4) the trial judge ensures that plaintiffs can reinstate their suit in the alternate forum without undue inconvenience or prejudice.
Fla. R. Civ. P. 1.061(a)(1).
The proposed alternate fora are the respective home countries of the plaintiffs, namely, Guatemala (Chamo), Colombia (Vega), Costa Rica (Simpson), Peru (Ta-nanta), and Honduras (Cruz), or the Netherlands Antilles. In Cruz Italy was also proposed.
The alternative fora are competent to hear these claims, and the cruise line defendants have agreed to submit to jurisdiction there. Thus the alternative fora are adequate and these parts of Rule 1.061 are satisfied.
VI.
The second part of the Rule 1.061 test is:
(2) the trial court finds that all relevant factors of private interest favor the alternate forum, weighing in the balance a strong presumption against disturbing plaintiffs’ initial forum choice[.]
Fla. R. Civ. P. 1.061(a)(2).
“As stated in Kinney, the phrase ‘private interests’ means adequate access to evidence and relevant sites, adequate access to witnesses, adequate enforcement of judgments, and the practicalities and expenses associated with the litigation.” Fla. R. Civ. P. 1.061 Court Commentary.
A.
The Netherlands Antilles flunks this part of the Rule 1.061 test. The cruise line defendants conduct no business activities whatsoever in the Netherlands Antilles. There is not a single witness or a single scrap of evidence in the Netherlands Antilles relating to the facts of this case.
The cruise line defendants proposed the Netherlands Antilles as a possible forum because CSCS International and Prestige Cruise N.V. are incorporated there. Each corporation has a registered agent there. That is the totality of the corporate defendants’ contacts with the Netherlands Antilles.
In Kinney, the Florida Supreme Court explained that corporate residency is a factor which can be considered in a forum non conveniens analysis, but is not disposi-tive. Writing in the context of a foreign corporation (Kinney Systems) which was doing business in Florida, the court said:
First, under our holding today it now is immaterial how “corporate residency” is determined, because a corporation’s var *895 ious connections with Florida — if any— will only be factors to be weighed in the balance of conveniences, as outlined above.... Instead, the trial court should gauge the situation using the “balance of conveniences” approach.
674 So.2d at 93 (footnote omitted).
Applying that test, the Netherlands Antilles must be rejected as an alternative forum. These cases are not connected to the Netherlands Antilles by any evidence, witnesses, or relevant events. The fact that two of the corporate defendants are incorporated there deserves no weight under the circumstances of this case. There simply is no private interest factor which favors the Netherlands Antilles.
B.
The more substantial question is whether the private interest factors favor the respective plaintiffs’ home countries instead of Miami-Dade County.
Our task is to determine the location of the evidence and witnesses. When this is done, it is clear that some evidence and witnesses are in Miami-Dade County, and some in the plaintiffs’ home countries. The remainder of the evidence and witnesses are in other countries in Latin America or Europe. Further, Miami-Dade County is properly viewed as being the home jurisdiction for CSCS International at times relevant here. When all of this is considered, the balance of the private interests tilts in plaintiffs’ favor.
Turning now to the pertinent facts, the plaintiffs became employed by Costa Cro-ciere at various dates beginning in 1996. In 1996 Costa Crociere was an entirely Italian-owned passenger cruise line with its headquarters in Italy. Costa Crociere set up a subsidiary, CSCS International, which served as the employer for non-Italian seamen on the ships involved in this case.
The unusual fact about CSCS International is that its only employees are seamen stationed on Costa Crociere ships. CSCS International has no land-based employees anywhere in the world. According to the cruise line defendants, CSCS International has thousands of seamen on its payroll.
To carryout the personnel, payroll, and administrative functions for these employees, CSCS International entered into an agreement with another Costa subsidiary, Cruise Ships Catering and Services Caribbean, N.V. (“CSCS Caribbean”), to act as its agent. CSCS Caribbean had its sole office in Miami-Dade County at times relevant here.[18]
Four of the plaintiffs — Chamo, Vega, Simpson, and Tananta — came to Miami for processing prior to being sent to their assigned ships.[19] The four plaintiffs signed their employment contracts in Miami, with CSCS International being identified as the employer.[20] The four plaintiffs received their pre-employment physicals in Miami. Thereafter each plaintiff was transported to his assigned ship.
*896 According to the testimony of Wanda Ballestas, an administrator with CSCS Caribbean, CSCS Caribbean maintained all of the personnel files in Miami for CSCS International’s employees. CSCS Caribbean handled the payroll functions in Miami. The employees were paid from a bank account in Florida.
When any seaman was injured, medical treatment and maintenance and cure were handled by CSCS Caribbean in Miami on behalf of CSCS International. If a representative was needed to testify in deposition or in court in connection with any such claim, CSCS Caribbean provided the representative. Ms. Ballestas testified that there were approximately forty to fifty such claims per year.
Under Kinney we are to look at substance, not form. See Kinney, 674 So.2d at 93. The substance here is that CSCS International maintained a Miami-based agent in Miami to perform its land-based functions. It is well-established that a person or corporation who maintains an agent in Florida is deemed to be present here. See § 48.193(1)(a), Fla. Stat. (1995). As a result of those activities, relevant evidence and witnesses exist in Florida.
The cruise line defendants say that during 1999 Costa Crociere transferred the responsibility for managing medical treatment and processing maintenance and cure claims to International Risk Services, Inc. (“IRSI”), a company owned by Laurence Klutz. IRSI is located in Florida and performs its work under contract to CSCS International. Thus medical treatment and maintenance and cure continue to be administered from South Florida for all of the plaintiffs. The records regarding those matters are maintained in Florida. Mr. Klutz is resident in Florida and is empowered to act as representative of CSCS International and other Costa entities in the case of litigated claims.[21] In the meantime, in 1997 Costa Crociere became 50% owned by Carnival Corporation, a Miami company. In 2000 Carnival became the 100% owner of Costa Crociere.
Turning now to the remainder of the private interest factors, the facts of each plaintiffs case must be examined. Plaintiff Chamo is a Guatemalan seaman who signed his employment contract with CSCS International in Miami in May 1996 and was assigned to the Costa Classica. He was injured in an accident off the coast of Italy in September of 1996. He was treated by the ship’s doctor (an Italian national) and received further treatment in Italy and Guatemala. The witnesses to the accident are crew members who are believed to be citizens of Latin America and Italy. The plaintiff resides in Guatemala.
Plaintiff Vega is a Colombian seaman who signed his employment contract with CSCS International in Miami in September 1996 and was assigned to the Costa Marina. He was injured in an accident aboard ship off the Italian coast in September of 1996. He received treatment from the ship’s doctor (an Italian national) as well as a doctor in Italy. He also received treatment and surgery in Florida. The witnesses to the accident are from Colombia, Honduras, and Guatemala. The plaintiff resides in Colombia.
Plaintiff Simpson is a Costa Rican seaman who signed his most recent employment agreement with CSCS International in Miami in May 1998 and was assigned to *897 the Costa Allegra.[22] He was injured in an accident on the high seas while sailing from the Netherlands to Brazil in November 1998. He received medical treatment in Brazil and Costa Rica as well as treatment and surgery in Miami. The witness to the accident is from Honduras. The plaintiff resides in Costa Rica.
Plaintiff Tananta is a Peruvian seaman who signed his employment contract with CSCS International in Miami in May 1999, and was assigned to the Costa Marina. He was injured in an accident off the coast of Argentina in February 2000. He was treated by the ship’s doctor (an Italian national). He received treatment in Argentina, Brazil, and Peru, as well as back surgery in Florida. The witnesses are from Italy and Latin America. The plaintiff resides in Peru.
Plaintiff Cruz is a Honduran seaman who signed his employment contract with CSCS International in Honduras in February 2000 and was assigned to the Costa Marina. He was injured while the ship was cruising in international waters in September 2000. He was treated by the ship’s doctors who were Italian and French nationals. He received treatment in Estonia and Honduras. The accident witnesses are believed to be citizens of Latin America or Italy. The plaintiff resides in Honduras.
The three ships involved in these cases do not have a fixed port from which they sail year-round. They sail varying itineraries in South America during the winter and Europe during the summer.
It is clear from the foregoing that some of the evidence and witnesses are in Florida. This includes CSCS International’s records of the medical treatment and maintenance and cure for each plaintiff. Copies of each plaintiffs personnel records are located here. Ms. Ballestas and Mr. Klutz are witnesses with knowledge of these matters. They reside in South Florida. Guiseppe Campagna is the former personnel manager for CSCS Caribbean and serves as Florida agent for Costa-related entities. He likewise resides in Florida. Three of the plaintiffs received treatment in Miami.
Some of the evidence and witnesses are in the plaintiffs’ home countries. This includes the five plaintiffs, who reside in their home countries. Each plaintiff received medical treatment in his home country. The treating personnel and medical records of home country treatment are located there.
The remaining witnesses on liability and treatment are abroad. The ships’ doctors were Italian or French. The other seamen identified as witnesses are from Latin America or Italy. To the extent that a view of any of the ships may be desirable, they call at various ports in Europe or South America. Those ships do not call in Miami and do not call in the plaintiffs’ home countries.
Regardless of whether each case is tried in Miami or the plaintiffs’ home countries, there will be some evidence which is local and the rest must be brought in from abroad. From this standpoint litigation in Miami and the home countries are equally convenient.
Tipping the balance in plaintiffs’ favor is the fact that CSCS International is properly viewed as a Miami-based company because its sole land-based office was located in Miami at the times pertinent to four of the five plaintiffs. The plaintiffs have thus *898 brought suit in CSCS International’s home jurisdiction. As this court said recently:
We observe at the outset, as has one of our sister courts, “that this case involves the exceptional situation in which the defendant ][has] been sued in [his] own home forum and [has] objected that [his] home forum is inconvenient.” Sanwa Bank, Ltd. v. Kato, 734 So.2d 557, 561 (Fla. 5th DCA 1999). A forum non conveniens argument coming from a party sued where he resides is both “puzzling” and “strange.”
Cardoso v. FPB Bank, 879 So.2d 1247, 1250 (Fla. 3d DCA 2004) (citations omitted).
Although the cruise line defendants maintain that the crew personnel functions were transferred to Monaco in 1999, it is undisputed that the personnel functions relevant here — medical care, maintenance and cure — have continued to be administered from Florida, not Monaco, for CSCS International seamen. It is hard to understand the logic which says that it is convenient to administer these matters from Florida but inconvenient to litigate about them in Florida. Also tipping the balance toward the plaintiffs is the fact that since 2000 Costa Crociere has become 100% owned by Carnival Corporation, a Florida company.
While the private interest factors are close to equipoise, the balance tips in favor of the plaintiffs.
C.
In the Cruz case the cruise line defendant’s argued that Italy should also be considered as a possible alternative forum. From what has been said in the previous section, the balance of private interest factors does not favor Italy.
The cruise line defendants have carefully avoided placing crew management functions inside Italy. Instead the crew personnel functions were managed from Florida until mid-1999, and medical care, maintenance and cure continue to be managed from Florida. When the cruise line defendants transferred other personnel management functions away from Florida, those functions were transferred to Monaco — not Italy.
Several of the plaintiffs received some of their medical treatment from Italian physicians on ship or shore, with other medical treatment occurring elsewhere. In Chamo, Cruz, and Tananta the accident witnesses are from Italy and Latin America, and in the remaining cases, Latin America alone. Evidence and witnesses are in Florida and the plaintiffs’ home countries.
In sum, while there are some relevant witnesses in Italy, as explained in the previous section the private interest factors favor Miami.
VII.
The third element of the Rule 1.061 test is:
(3) if the balance of private interests is at or near equipoise, the court further finds that factors of public interest tip the balance in favor of trial in the alternate forum[.]
Fla. R. Civ. P. 1.061(a)(3).
This factor weighs in favor of the plaintiffs, not the defendants. The plaintiffs are Jones Act seamen. As previously stated, the Jones Act is federal legislation which allows an injured seaman to bring an action for personal injury sustained in the course of his employment. 46 U.S.C.App. § 688.
To determine whether the Jones Act is available to a seaman serving on a foreign flag vessel, the United States Supreme Court has fashioned a multipart choice-of- *899 law test. The United States Supreme Court said:
The Jones Act speaks only of ‘the defendant employer’ without any qualifications. In Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254, however, we listed seven factors to be considered in determining whether a particular shipowner should be held to be an ‘employer’ for Jones Act purposes:
(1) the place of the wrongful act; (2) the law of the flag; (3) the allegiance or domicile of the injured seaman; (4) allegiance of the defendant shipowner; (5) the place where the contract of employment was made; (6) the inaccessibility of a foreign forum; and (7) the law of the forum.
[[Image here]]
The Lauritzen test, however, is not a mechanical one. 345 U.S., at 582, 73 S.Ct. 921. We indicated that the flag that a ship flies may, at times, alone be sufficient. Id. at 585-586, 73 S.Ct. 929-930 The significance of one or more factors must be considered in light of the national interest served by the assertion of Jones Act jurisdiction. Moreover, the list of seven factors in Laurit-zen was not intended as exhaustive. As held in Pavlou v. Ocean Traders Marine Corp., 211 F.Supp. 320, 325, and approved by the Court of Appeals in the present case, [Hellenic Lines Limited v. Rhoditis,] 412 F.2d [919], at 923 n. 7 [(5th Cir. 1969)], the shipowner’s base of operations is another factor of importance in determining whether the Jones Act is applicable; and there well may be others.
Hellenic Lines Limited v. Rhoditis, 398 U.S. 306, 308-09, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970).
Substance controls this analysis, not form. “If ... the liberal purposes of the Jones Act are to be effectuated, the facade of the operation must be considered as minor, compared with the real nature of the operation and a cold objective look at the actual operational contacts that this ship and this owner have with the United States.” Id. at 310, 90 S.Ct. 1731 (citation omitted).
The most striking fact about this case is that the cruise line defendants placed the plaintiffs on the payroll of CSCS International, which is properly viewed (for these purposes) as a Florida-based company.
Since CSCS International as the employer of these plaintiffs chose to have its only land-based business office in Florida, then CSCS International must play by the same rules as everyone else. “We see no reason whatsoever to give the Jones Act a strained construction so that this alien owner, engaged in an extensive business operation in this country, may have an advantage over citizens engaged in the same business by allowing him to escape the obligations and responsibility of a Jones Act ‘employer.’ ” Hellenic Lines Limited v. Rhoditis, 398 U.S. at 310, 90 S.Ct. 1731. Where, as here, an employer sets up its only office in the United States, places seamen on the payroll, and assigns them to ships overseas, those are Jones Act seamen and are entitled to the protections of that statute.[23]
None of the other factors in the Rhodi-tis test outweighs those just stated. Factor (1) is the place of the wrongful act. *900 398 U.S. at 308, 90 S.Ct. 1731. The injuries occurred on the high seas in each case, either in the vicinity of Italy or South America.
Factor (2) is the law of the flag. Id. The vessels flew the flag of Liberia. The Costa Marina has subsequently been re-flagged as an Italian-flagged vessel.
Factor (3) is the allegiance or domicile of the injured seamen. Id. These are the plaintiffs’ home countries in Central or South America.
Factor (4) is the allegiance of the defendant shipowner. Id. This was Italy. However, as of 2000 the ultimate allegiance is to Carnival Corporation, an American company.
Factor (5) is the place where the contract of employment was made. Id. That was Miami for plaintiffs Vega, Chamo, Simpson, and Tananta, and Honduras for plaintiff Cruz.
Factor (6) is the inaccessibility of the foreign forum. Id. Miami and the home countries are accessible fora.[24] Italy is a distant and less accessible forum from the viewpoint of the plaintiffs.
Factor (7) is the law of the forum. Id. This factor has already been discussed. These are Jones Act seamen who are entitled to that benefit.
Although not assigned a number in the Rhoditis opinion, an eighth factor is the shipowner’s base of operations. Id. at 309, 90 S.Ct. 1731. It appears that Costa Cro-ciere’s cruise operations are directed primarily from Italy.[25] However, Costa Cro-ciere has not placed the plaintiffs on the payroll of any Italian company, placing them instead in the employ of an offshore corporation, CSCS International, which is administered from Florida and Monaco.
When the Rhoditis factors are considered, it is clear that the Jones Act applies here. This factor weighs in favor of denying the motion to dismiss.
In addition, Florida has a public interest in seeing that employees of Florida companies have a fair and effective forum in which to resolve disputes and obtain benefits to which the employee may be entitled.
The public interest factors weigh on the side of keeping the lawsuits here.
VIII.
We deal here with accidents occurring aboard ships which sail seasonally in different parts of the world. In these particular cases there is no one overwhelming land-based connection. Instead, there are evidence and witnesses in several scattered jurisdictions. The forum non conve-niens issue must be sorted out by applying Rule 1.061 to the facts of the case.
Apply those factors here, we should recede from this court’s earlier decision in Cruise Ships Catering and Services International, N.V. v. Tananta, 823 So.2d 258 (Fla. 3d DCA 2002). We should reverse the dismissal orders in the Chamo, Simpson, and Tananta cases, and affirm the orders denying the motions to dismiss in the Cruz and Vega cases. We should grant leave to the trial court in Tananta to impose the sanctions Judge Friedman out *901 lined in his order dated June 20,2003.[26],[27]
GODERICH and RAMIREZ, JJ., concur.

. The employment and injury dates are:
Employed Injury ship
Costa Classica Chamo May 1996 September 1996
Costa Marina Vega September 1996 September 1996
Costa Allegra Simpson May 1998 November 1998
Costa Marina Tananta May 1999 February 2000
Costa Marina Cruz February 2000 August 2000

. Although it makes no difference to the analysis, at the time of plaintiff Chamo's accident the Costa Classica was owned by another Italian corporation, Mediterranean Cruise Lines, S.p.A., but that company subsequently merged into Costa Crociere, S.p.A.

. Plaintiff Vega's employment contract is with an entity named Cruise Ships Catering and Services, N.V. (“CSCS”). Both sides say that this is CSCS International, but do not explain why ‘‘International’' is omitted from the name of the business entity on the employment contract.

. In Simpson the trial court favored denial of the motion but concluded that dismissal was required by Tananta.

. There is more to this issue than at first meets the eye. In Kinney, Florida adopted the federal doctrine of forum non conveniens. 674 So.2d at 93. Thus in applying Kinney, opinions of the federal courts on forum non conveniens issues are persuasive although not binding. Id.
The problem is that the federal courts of appeals disagree on how to perform the forum non conveniens analysis in a case in which the Jones Act applies:
Several circuits hold that if the Jones Act applies, the claim may not be dismissed even on the grounds of forum non conve-niens. Other courts, however, hold that choice of law is a part of a forum non conveniens analysis so that even if the Jones Act or U.S. law applies, the case can be dismissed.
1 Thomas J. Schoenbaum, Admiralty and Maritime Law § 6-13, at 311 (4th ed.2001) (footnotes omitted).
The federal Eleventh Circuit follows the former view, as reflected in our quotation of federal Eleventh Circuit precedent in Henry. See Henry, 851 So.2d at 734-35. In the federal Eleventh Circuit, if the plaintiff is a Jones Act seaman, that fact is dispositive and the case cannot be dismissed for forum non con-veniens.
The Schoenbaum treatise asserts that the federal Eleventh Circuit view is inconsistent with the United States Supreme Court decision in Piper Aircraft Co. v. Reyno, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). Schoenbaum argues that after Reyno, the fact that a plaintiff is a Jones Act seaman is one factor to be considered in a forum non conve-niens analysis but is not dispositive. The Second and Fifth Circuits have so held. See 1 Thomas J. Schoenbaum, supra, § 6-13 at 314 & n. 26.
The Schoenbaum analysis is persuasive. We must follow the rule of Piper Aircraft Co. v. Reyno on forum non conveniens. Thus we must recede from that part of Henry which (relying on federal Eleventh Circuit precedent) states that there can be no forum non conveniens dismissal in a maritime case where United States law (including the Jones Act) applies. The applicability of United States law is one factor to be considered, but is not dispositive.

.CSCS Caribbean shared office space in Miami with another Costa Crociere subsidiary, Costa Cruise Lines N.V. At the times relevant here, Costa Cruise Lines N.V. had approximately 70-100 employees in its Miami office. It had a budget of approximately $5.5 million for marketing and ticket issuance for the approximately 50,000-55,000 passengers from the United States who sail on Costa Crociere ships annually.

. The exception was plaintiff Cruz, who traveled directly from his home country of Honduras to his assigned ship.

. It was incorrectly stated in the Tananta panel opinion that Tananta signed his employment contract in Peru. While the contract so states, the cruise line defendants concede that he signed in Miami.

. The cruise line defendants state that the remaining personnel functions of CSCS International have been transferred to Monaco.

. Plaintiff Simpson's initial employment with CSCS International began in Miami in 1996. He first served on the Costa Romanti-ca when it was based in Ft. Lauderdale, followed by service on the Costa Victoria, when it was based in Ft. Lauderdale.

. The only arguable exception is plaintiff Cruz, who signed his employment contract in Honduras in February 2000 and proceeded directly to his assigned ship. According to the cruise line defendants, by this time the personnel and payroll functions were being administered from Monaco, while medical treatment and maintenance and cure continued to be administered in Florida by IRSI.

. The Netherlands Antilles is not an accessible forum within the meaning of Rhoditis, for neither side has any meaningful contact with that jurisdiction and it is both pointless and burdensome to litigate there.

. The majority opinion, in footnote three appears to acknowledge that a trial court has the power to impose sanctions where false affidavits have been submitted. In its conclusion, however, the majority opinion simply directs that the five cases be dismissed — apparently without any sanctions whatsoever.

. The majority opinion says, "While three claimants did visit Miami physicians, the record suggests this occurred in conjunction with or after consultation with counsel. The seamens’ counsel have failed to dispute this or to demonstrate that these medical visits were independent decisions not generated in anticipation of litigation." Majority opinion at 887 n. 11. See also id. at 878.
As to the three plaintiffs referred to by the majority opinion, plaintiff Simpson’s affidavit states that he was examined by a board certified orthopedic surgeon in Miami. The physician "told me that the first [arthroscopic] surgery that was performed in my country had not been done correctly. Therefore, I wanted my medical care and treatment here in Miami, Florida.” Simpson R. 1352.
Plaintiff Tananta's affidavit states that he was ordered by the defendants to have his medical treatment in Peru but did not wish to have treatment there. Tananta R. 258. His back surgery was performed in Florida. Id. at 259.
Plaintiff Vega testified in deposition that he requested treatment from defendants and received none. Prestige Cruises, N.V. v. Vega Appendix 42. He retained counsel who arranged treatment for him in Florida. Id. at 42-47.
The majority opinion loses sight of the fact that when the employer has wrongly withheld maintenance and cure, it is the job of counsel to see that the seaman receives needed treatment.

. The record contains indications that Carnival Corporation has become involved to a limited extent in operational matters of Costa Crociere since its acquisition of ownership.